Peter J. Timbers
Schwartz, Bon, Walker & Studer, LLC
141 S. Center Street
Suite 500
Consolidated Royalty Building
Casper, WY 82601
(307) 235-6681 (Telephone)
(307) 234-5099 (Facsimile)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 10-CR-329 |
| ) | |
| **Miguel Angel Ordaz**, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT ORDAZ'S MOTION TO SUPPRESS ALL EVIDENCE SEIZED DURING SEARCH OF DEFENDANT AND HIS HOME

**COMES NOW**, Defendant, **Miguel Angel Ordaz**, by and through his counsel, Peter J. Timbers of Schwartz, Bon, Walker & Studer, LLC, and hereby moves the court to suppress all evidence obtained through and derived from the execution of the search warrant for Miguel Angel Ordaz and his premises of 456 E. Burkett, Sheridan, Wyoming and the vehicle described as a dark blue Ford expedition, Wyoming passenger plate 3 – 23996 as described in the attached exhibit a, application and affidavit for a search warrant.

Defendant Miguel Ordaz argues herein that law enforcement authorities violated his constitutionally protected Fourth Amendment rights as they executed their search of his person, the car he was driving and his home. Defendant herein requests that all evidence obtained during said search be suppressed, evidence derived from said search be suppressed and in the alternative

requests an evidentiary hearing for determining an examining the representations made in police Officer Travis affidavit in support of the warrant.

### I.     Introduction.

On November, 2010, Officer Travis Harnish submitted his affidavit and application for the search of Defendant Ordaz's person, car he was driving and his. The application for search warrant was signed by U.S. Magistrate Judge David C, Smith.

Officer Harnish offered 15 paragraphs to support his application for a search warrant. (See Exhibit A).

Paragraphs 1 through 5 contain no information regarding defendant Miguel Ordaz. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 6 contains a conclusory statement regarding defendant Miguel Ordaz. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

At paragraph 7 of Officer Harnish's affidavit, he purports to have received an anonymous tip that three Hispanic "gang" members were involved in the sale and distribution of large quantities of methamphetamine in the Sheridan area. Officer Harnish's representation regarding and anonymous tip undoubtedly reflects back to and alleged e-mail he informed the court about in his application for a wiretap. (See Exhibit B).

The purported e-mail/anonymous tip has never been produced in any form i.e. either in its entirety or in a redacted version.  The existence of the purported e-mail/anonymous tip has never been verified. The undersigned attorney believes this anonymous tip to be highly suspect, perhaps even mythical.  In addition to the February 18, 2010 e-mail never being produced, the

purported February 19, 2010 correspondence has never been produced. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 8 contains no information regarding Miguel Ordaz. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 9 is an unsupported, conclusory statement that defendant Miguel Ordaz was a "bulldog" gang member. There is no violation of the law alleged in paragraph 9. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 10 states that packages were received at Shipton's big are in Sheridan as well as 463 Coffee Ave. Said packages were allegedly sent from Fresno California. There is no violation of the law alleged in paragraph 10.

Paragraph 11 states that money was wired to Fresno, California by defendant Ordaz and others. There is a conclusory statement stating that Ordaz and other members of a "drug" organization wired money. There is no violation of the law alleged in paragraph 11. There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 12 states that on September 9, 2010, Confidential Informant 2010 – 051 observed Ordaz opening packages which originated from California. Confidential Informant 2010 – 051 alleges that methamphetamine was contained in said packages. Confidential Informant stated that she had wired/sent money to California on behalf of Ordaz. Confidential Informant 2010 – 051 stated that he/she stored firearms for defendant Ordaz. Confidential

Informant 2010 – 051 then stated that the firearms were now in Ordaz's residence. Confidential Informant 2010 – 051 then contrqadicted herself/himself and stated that defendant Ordaz did not have said guns in his residence. All totaled, Confidential Informant 2010 – 051 contradicted/impeached herself beyong the point of providing any credible information to the magistrate or information that should be relied upon by an officer who should know the law. Despite the self-impeachment, Officer Harnish provides the magistrate with his assessment: Confidential Informant 2010 – 051 is "credible". This paragraph alone should cause any neutral and detached magistrate to question the credibility of not only Confidential Informant 2010 – 051, but more importantly the reasoning, logic, discretion, wisdom, and ability of Officer Harnish to declare any witness as "credible". There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 13 states that Confidential Informant 2010 – 057 received methamphetamine from Ordaz on one occasion. Confidential Informant 2010 – 057 states that he/she had seen defendant Ordaz in possession of firearms. Owning firearms is not a violation of the law. There is no statement regarding possession of the firearms and receipt of methamphetamine taking place in defendant Ordaz's home. Again, Officer Harnish declares this witness to be "credible". There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

Paragraph 14, a statement by Confidential Informant 2010 – 063, relates that defendant Ordaz kept a yellow notepad allegedly listing drug transactions and debts owed to defendant Ordaz. Possession of a yellow notepad is not a crime. Paragraph 14 also relates that defendant Ordaz has several firearms. Again, possession of firearms is not criminal activity. Officer Harnish also declares this witness to be "credible". There is no nexus or rational connection to

4

Defendant's home or any automobile and any criminal activity in this paragraph. Paragraph 15 is a hearsay statement by Jason Lyles. Jason Lyles then speculates that his supplier of methamphetamine owed a drug debt to defendant Ordaz. Mr. Lyles then speculates that his supplier of methamphetamine gave Ordaz a firearm with ivory grips. Paragraph 15 is nothing more than hearsay compounded with speculation. Officer Harnish declares this witness to be "credible". There is no nexus or rational connection to Defendant's home or any automobile and any criminal activity in this paragraph.

### II.     Argument.

The warrant clause of the Fourth Amendment of the United States Constitution provides that "no warrants shall issue, but upon probable cause." Rule 41 (c) of the federal rules of criminal procedure states that a warrant may issue upon an affidavit sworn to before a federal magistrate judge or state judge if the magistrate judge or judges satisfied that the affidavit reflects probable cause that a crime has been or is being committed at the place to be searched.

A search warrant must be supported by "more than mere speculation but less evidence than is necessary to convict." *United States v. Burns*, 624F.2D 95, 99 (10th Cir. 1980). Probable cause undoubtedly requires a nexus between the suspected criminal activity in the place to be searched. *United States v Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990). The Supreme Court has rejected the formal requirement that affidavits provide facts establishing the ferocity or specific reliability of Informant in favor of the totality of the circumstances test. *Massachusetts v. Upton*, 466 U.S 727, 732 (1984). Under this test, "there is no need for a declaration of the reliability of Informant when Informant information is corroborated by other information." *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992); see also *United States v Brown*,

984 F.2d 1074, 1076 – 77 (10th Cir.) (affiant Officer observed residence and corroborated seemingly innocent activity), certiorari denied, 510 US 873 (1993).

In reviewing the decision of the magistrate to issue a warrant, the reviewing court is not to conduct "a de novo probable cause determination" but instead must decide "whether the evidence viewed as a whole provided a substantial basis for the magistrate finding of probable cause." *Upton*, 466 U.S. at 732 – 33, applying *Illinois v. Gates*, 462 U.S. 213 (1983). The court "must consider the totality of the circumstances and determine whether the affidavit established the probability that evidence of criminal activity would be located in the desired search area." *United States v. Wittgenstein*, 163 F.3d 1164, 1171 (10th Cir. 1998).

Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Indeed, "it would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *438 U.S.,* at 165, 98 S.Ct., at 2681.

The courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas, supra*, 378 U.S., at 111, 84 S.Ct., at 1512. See *Illinois v. Gates*, 462 U.S., at 239, 103 S.Ct., at 2332. A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.

*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-327, 99 S.Ct. 2319, 2324-2325, 60 L.Ed.2d 920 (1979).

Probable cause to issue the warrant requires a nexus between the place to be searched and the items to be seized. *United States v. Coral-Coral*, 899 F.2d 927, 937 (10th Cir. 1990). Probable cause to search a person's residence does not arise based solely upon probable cause to believe the person is guilty of a crime. *United States v. Roland*, 145 F.3d 1194, 1203 (10th Cir. 1998). Instead there must be additional evidence linking the person's home to this perspective criminal activity. *Id*. The Tenth Circuit has "never held that the mere observation of repetitive illegal drug activity outside a suspect suspects residence by itself is assistant to establish probable cause for a search of the suspect residence." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).

In *Roland*, the magistrate issued an anticipatory search warrant to search Roland's home based on receiving child pornography. The court, after noting the affidavit said nothing about Roland ever taking or possessing illegal pornography at his home, found that the search warrant affidavit lacked probable cause because "the government has not explained why it was logical to infer Roland would take the tapes home to view or store, rather than taking the tapes to some other location." *Roland*, 145 F.3d at 1205. Roland expressly indicated that the resolution of a Fourth Amendment issue was "necessary to guide future action by law enforcement officers and magistrates." *Roland*, 145 F.3d at 1206, note 8.

In *Nolan*, a warrant issued to search the defendant's house for documents, electronic equipment and assets related to drug paraphernalia. The affidavit was found insufficient to establish probable cause because it made no reference to the defendant conducting any of his drug activities from the house. Specifically, the affiant's conclusory statement that based upon

7

his training and experience, Sgt. Crawford opined that the drug traffickers sometimes maintain records and quantities of the contacts in easily accessible locations" such as their homes, was held insufficient to establish a nexus between the alleged illegal drug dealing and the defendant's home to justify a search of the home. Consider here that there is nothing more than conclusory statement by the affiant that the target quote is believed to be a member of a "drug" organization.

In the *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2002), the court held that "an affidavit replete with repetitive and tenuous fax does not provide a magistrate with sufficient basis for drawing a reasonable inference that the search would uncover evidence of criminal activity." *Danhauer*, 229 F.3d at 1006. Consider here that no reference in the affidavit supports the notion that the drugs were at the home of defendant Ordaz.

In the case at bar, the search warrant affidavit contains contradictory statements by Confidential Informant 2010 – 050. Contradictory statements cannot support a conclusion necessary to violate Defendant Ordaz's Fourth Amendment rights. This court should find that the affidavit lock probable cause for the issuance of the warrant.

Even if the Court were to find that the warrant lacked probable cause, the Court must further determine whether the good-faith exception established in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 802 L.Ed.2d 677 (1984) applies. Searches conducted pursuant to warrant our favored, *Leon*, 468 U.S. at 914, 104 S. Ct. 3405, and the magistrates determination that probable cause exists is entitled to great deference. *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). Officers are generally not required to second-guess the magistrate's decision in granting a warrant. *United States v. Tutor*, 240 F.3d 1292, 1300 (10th Cir. 2001). Nevertheless, the deference given to such warrants is not boundless. *Leon*, 468 U.S. at 914, 104 S. Ct. 3405. There are four contexts where an Officer cannot be found to have relied on a warrant

in good faith. One is important in this case: where the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon* 468 U.S. at 923, 104 S. Ct. 3405.

While Officers are generally entitled to rely on the magistrates judgment, they are also required to exercise their own professional judgment. *The United States v. Gonzalez*, 399 F.3d 1225, 1230 (10th Cir. 2005 those paren. Indeed, law enforcement officials are presumed to have a reasonable knowledge of the law. *Leon*, 468 U.S. at 919, note 20, 104 S. Ct. 3405. "Good faith" in this context is determined by considering whether a "reasonably well-trained officer would have known that the search was illegal despite the magistrates authorization." *Leon*, 468 U.S. at 922, note 23; 104 S. Ct. 3405. Under this standard, when the underlying documents are "devoid of factual support an officer cannot be said to have relied on them in good faith. *Gonzalez*, 399 F.3d at 1230. *Corral – Corral*, 899 F.2d at 939; accord *Danhauer*, 229 F.3d at 1006.

In *United States v. Gonzalez*, the defendant's car had been searched following his arrest on alcohol-related charges. A magazine for a Glock 10 mm firearm containing nine live rounds was found, but the weapon itself could not be located. When the Officers discovered that the driver was convicted felon, they sought a warrant to search his house, based on the Officer's assertion that he knew "from his police training and experience that firearms are often kept at the residence as well as in vehicles." The Officer otherwise showed no nexus between a firearm, the defendant and the house. The 10th Circuit held not only that the affidavit lacked probable cause for the issuance of the warrant, but also that the *Leon* good-faith exception would not apply. "For good faith to exist, there must be some factual basis connecting the place to be searched to the defendant or the suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are "so lacking in indicia or probable cause as to render official belief in its

9

existence entirely unreasonable." *Gonzalez*, 399 F.3d at 1231. See also *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988).

The Tenth Circuit has repeatedly emphasized that mere observation of criminal activity away from a suspect residence is insufficient to establish probable cause for the search of the suspect's residence. The Tenth Circuit in *Rowland* in 1998 when so far as to specifically state that its resolution of the issue was "necessary to guide future action by law enforcement officers and magistrates." In *Nolan*, one year later, the Tenth Circuit made clear that this rule applied to repetitive illegal drug activity outside a suspected residence as being insufficient to justify issuance of a warrant to search the suspect's residence. As recently as 2005, the Tenth Circuit threw out a conviction of Roberto Gonzalez one affidavit for a search warrant failed to make some factual basis connecting the place to be searched with the suspected criminal activity. See generally, *United States v. Gonzalez*, 399 F.3d 1225, 1230 (10th Cir. 2005).

*Leon* requires that Officers are presumed to have reasonable knowledge of the laws. The government, given these facts, cannot rely on *Leon* to save a search warrant based on what is an obvious bare-bones, conclusory affidavit containing tenuous facts, with a magistrate was not given sufficient basis for drawing a reasonable inference that a search warrant would uncover evidence of criminal activity at the place to be searched. All evidence obtained from the execution of the search warrant should be suppressed.

An affidavit inclusive of confidential informant self impeachment is a horrendously travesty. Any neutral and detached magistrate should avoid signing the same. Additionally, any officer should know not to rely on a witness which impeaches themselves prior to violating a person's right to be free from search and seizure.

**CONCLUSION**

The search warrant affidavit lacked probable cause to issue the search warrant and the Officers had no good faith basis to rely on the warrant. The warrant lacks any association between alleged criminal activity and the residence of Defendant Ordaz. All evidence obtained from and derived from the Government's violation of Defendant's Fourth Amendment rights should be suppressed under *Wong Sun v. United States*, 371 US 471, 488 (1963). The affiant relies on upon a completely non-credible, self-impeached witness. Affiant's declaration of "credible witness" is completely questionable and should not have been relied upon by the magistrate.

**WHEREFORE**, Defendant **Miguel Angel Ordaz** respectfully requests this Court order that evidence obtained from the search of his home the entirely suppressed. Alternatively, Defendant Miguel Angel Ordaz respectfully requests that this Court hold an evidentiary hearing regarding this motion.

**DATED** this 15th day of May, 2011.

/s/Peter J. Timbers
Peter J. Timbers
Schwartz, Bon, Walker & Studer, LLC
141 S. Center Street, Suite 500
Consolidated Royalty Building
Casper, WY 82601
(307) 235-6681 (Telephone)
(307) 234-5099 (Facsimile)
Attorney for Defendant

### CERTIFICATE OF SERVICE

I, Peter J. Timbers, certify that a true and correct copy of the foregoing document, *DEFENDANT ORDAZ'S MOTION TO SUPPRESS ALL EVIDENCE SEIZED DURING SEARCH OF DEFENDANT AND HIS HOME*, was served upon the United States Attorney and the parties involved in this matter by CM/ECF electronic mail notification, this 15th day of May, 2011:

12

/s/Peter J. Timbers

_____