Darrell L. Fun
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   **Criminal No. 10-CR-329-F** |
| **MIGUEL ANGEL ORDAZ,** | ) |
| **aka "Isaias Rivera",** | ) |
| **aka "Tomas Hueso, Jr."** | ) |
| | ) |
| Defendant. | ) |

### GOVERNMENT'S RESPONSE TO
### DEFENDANTS ORDAZ's MOTION TO SUPPRESS

COMES NOW the United States, by and through its attorney, Darrell L. Fun, Assistant United

States Attorney for the District of Wyoming, and files the following responses to the Defendant

Miguel Angel Ordaz's motion to suppress evidence seized pursuant to a valid search warrant executed

at his residence and for his vehicle and his person.

### I.      INTRODUCTION

The Defendant has filed a Motion to Suppress contending that the search of his person, vehicle

and residence located at 456 East Burkitt, Sheridan, Wyoming, was based on a search warrant that

lacked probable cause.   The Defendant argues that the affidavit does not contains sufficient

information to establish an "association between alleged criminal activity and the residence" and that

the magistrate should not have relied upon the information in the affidavit because of "self impeachment" information.  (Def. Motion to Suppress, p. 11).  The Defendant seeks to suppress evidence of various items, including methamphetamine, a fully automatic weapon and other firearms, ammunition, receipts for money transfers, cell phones and money found pursuant to the search warrant.  (See Gov. Ex. 2, Search Warrant and Return)

However, a review of the search warrant affidavit, which Special Agent Travis Harnish ("SA Harnish")[1] signed under oath in front of Federal Magistrate Judge David Smith, clearly demonstrates that the affidavit established probable cause.  Further, the fact that there may be an inconsequential minor piece of information within the affidavit that is claimed to be inconsistency does not detract from the Magistrate's finding that, based upon the totality of the information, there was a basis to issue the warrant.  Even assuming, for some reason, that the affidavit is lacking in probable cause, the evidence would still not be suppressed because the executing officer acted in good faith reliance upon a judicially issued search warrant.

## II.    APPLICATION AND AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT

On November 19, 2010, SA Travis Harnish made application to Federal Magistrate Judge David Smith for a search warrant supported by a detailed affidavit for the premises of 456 East Burkitt, Sheridan, Wyoming.[2]  The application described the basis for probable cause.  (See Gov. Ex.

---

[1]  SA Harnish is a Task Force Officer assigned to the Wyoming Division of Criminal Investigation.  He has over 15 years of law enforcement experience, including experience and training involving federal and state investigations of controlled substance violations.

[2]  The application, search warrant and facts contained in the affidavit requested a search warrant for 1) the person of Miguel Angel Ordaz, the Defendant, 2) the premises of 456 East Burkitt, Sheridan, Wyoming, the Defendant's residence, and 3) a dark blue Ford Expedition, Wyo Lic #23996.  However, for purposes of brevity, since the Defendant is generally contending that the affidavit did not establish probable cause, reference will be only be made to the residence.

1, Search Warrant Application and Affidavit).  In this affidavit, SA Harnish discusses the basis of his

investigation, the sources of his information.  He corroborates the information through surveillance,

traffic stop to identify the Defendant, subpoenas documents, developing confidential informants and

interviewing witnesses.  The Defendant's suggestion, through "nit-picking" at insignificant details

extracted from a multi-paragraph affidavit, that the affidavit lacks probable cause is completely

without any merit.  The following is a list of some of the primary facts that SA Harnish relayed to

Magistrate Smith in his affidavit to support the search warrant:[3]

- 7.  On February 18, 2010, your affiant received an anonymous tip that three Hispanic "gang" members were involved in selling/distributing large quantities of methamphetamine in the Sheridan area.  On February 19, 2010, your affiant received more information from the anonymous source that the involved subjects were receiving large quantities of methamphetamine through the mail. The involved subjects went by the names of "Rob", "Noe", and "Isaias".   One of these subjects was a homicide suspect in California.  "Rob", "Noe" and "Isaias" were members of the Bulldog Gang out of Fresno California. The anonymous source stated that a female subject who lived across from Safeway in Sheridan that drove a gray Durango and a blue Expedition received the packages at Shipton's Big R in Sheridan containing methamphetamine and stored weapons for the "gang" members.

- 8.  Your affiant and other agents of the Wyoming Division of Criminal Investigation located a gray Dodge Durango and a blue Ford Expedition parked across from Safeway at 154 Coffeen Ave in Sheridan.  The vehicles were registered to Kimberly Perkins.  On several occasions your affiant observed Perkins drive the Gray Dodge Durango between 154 Coffeen Ave and Shipton's Big R in Sheridan. Agents observed the blue Ford Expedition on several occasions being driven by a Hispanic male. The Expedition was often parked in front of 456 East Burkitt, Sheridan, Wyoming.

- 9.  On March 24, 2010, a traffic stop was conducted on the blue Ford Expedition. The Hispanic male driver was identified as Miguel Angel Ordaz. Following the identification of Ordaz, your affiant learned that Ordaz was a confirmed member of the Bulldog Gang out of Fresno California. Your affiant also learned that Ordaz was the suspect in a homicide by firearm in Fresno, California.

- 10. A subpoena to UPS confirmed multiple packages were being sent from Fresno California to Shipton's Big R in Sheridan.  Several of these packages had been signed

---

[3]  The numbers associated with each separate fact correlate with the paragraph numbers in SA Woodson's affidavit in support of the search warrant.

for by "Perkins".  Packages were also sent to 463 Coffeen Ave and signed for by "Rivera" (Miguel Angel Ordaz has known aka's of Isaias Rivera and Tomas Hueso). A subsequent subpoena confirmed that packages had also been sent to "Rivera" at 456 East Burkitt in Sheridan Wyoming.

- 11. Subpoena's of Western Union and MoneyGram transactions confirmed that Ordaz and other members of this drug organization wired money to subjects, some of whom are known members of the Bulldog Gang, in Fresno, California corresponding with package arrival dates in Sheridan, Wyoming.

- 12.   On September 9, 2010, Agents contacted a confidential informant, hereafter referred to as CI 2010-051, in reference to packages being received at Shipton's Big R in Sheridan Wyoming.  CI 2010-051 confirmed that multiple packages containing methamphetamine were sent to Shipton's Big R in Sheridan from Fresno California. CI estimated that there were between twenty-four (24) and thirty-two (32) packages sent to CI 2010-051 at Shipton's Big R.  CI 2010-051 observed Ordaz open a couple of these packages.  CI 2010-051 observed Ordaz remove a large five (5) wick style candle from the package, break it open, and remove multiple baggies of methamphetamine from the candles. CI 2010-051 estimated each baggy to be one (1) to two (2) ounces of methamphetamine. CI 2010-051 had sent money via Western union or MoneyGram for Ordaz to California at last one (1) time.  CI 2010-51 had stored some of Ordaz's guns at CI 2010-051's residence for Ordaz. CI 2010-051 described the guns as a handgun, a shotgun, and a long rifle.  CI 2010-051 indicated that the guns were now in Ordaz's residence and placed in locations around the residence, such as Ordaz's bedroom and living room.  Later CI 2010-051 told agents that Ordaz had gotten rid of his guns. CI 2010-051 then ended all contact with agents. CI 2010-051 is a known informant that has provided credible information regarding this case that has been corroborated through the statements of other confidential informants and subpoenas of UPS records.

- 13.   On September 15, 2010 agents interviewed a confidential informant, hereafter referred to as CI 2010-057.  CI 2010-057 received methamphetamine from Ordaz on one occasion.  CI 2010-057 had seen Ordaz in possession of several firearms, including an MP5 assault rifle and several different handguns early in 2010. CI 2010-057 is a known informant that has provided credible information regarding this case that has been corroborated through statements made by other confidential informants, search warrants, and recorded jail calls.

- 14.   On October 1, 2010 your affiant interviewed a confidential informant, hereafter referred to as CI 2010-063. CI 2010-063 stated that Ordaz kept a yellow note pad near his bed. The yellow note pad listed drug transactions and drug debts owed to Ordaz. CI 2010-063 last saw the yellow note pad at Ordaz's residence, 456 East Burkitt in Sheridan Wyoming around the beginning of September.  CI 2010-063 stated that Ordaz has several firearms. CI 2010-063 described Ordaz as being a "gun collector".  Ordaz got a laser sight for a large handgun that Ordaz had.  CI 2010-063 observed

several firearms including the handgun with the laser sight in Ordaz's house in August of 2010.  CI observed a handgun (revolver) with a "pretty" handle on, a rifle, and a semi auto handgun with a matt silver finish.  CI 2010-063 is a known informant that has provided credible information regarding this case which has been corroborated through statements made by other confidential informants and Law Enforcement records.

- 15.  On October 14, 2010, your affiant participated in a proffer interview with Jason Lyles.  Lyles advised agents that his supplier of methamphetamine had a substantial drug debt to Ordaz,.  Lyles believed the debt to be around $6000.  Lyles told agents that his supplier had possibly given Ordaz a handgun, but did not know when.  Lyles described the handgun as a black 9mm with ivory grips.

Based on this information, SA Harnish prepared his application for a search warrant authorizing the search of 456 East Burkitt.  However, before asking Magistrate Smith to approve his request for a search warrant, SA Harnish took the additional precaution of asking the United States Attorney's Office to review and approve the warrant.  After receiving that approval, he approached Magistrate Smith with the application for the search warrant.  Magistrate Smith approved the application and signed the warrant on November 19, 2010.  (See Gov. Ex. 2).  The search warrant was executed on November 22, 2010.  (See *id*., Search Warrant Return).  Various items were recovered from the residence, including firearms, holsters, drugs, papers, photographs and ammunition.  Money, ammunition, papers and receipts were recovered from the Defendant's vehicle. (See *id*., Search Warrant Return Inventory).

## III.    DISCUSSION

### A.  Probable Cause

The Defendant attacks the warrant of his residence alleging a lack of probable cause that the residence contained illegal items.[4]   The Defendant, taking selected paragraphs from the affidavit,

---

[4]The Defendant does not dispute that he lived at 456 E. Burkitt.  Nor does he contest that the dark blue Ford Expedition, Wyo Lic #23996, was a vehicle he possessed, used and exercised dominion and control over.

rather than considering the affidavit as a whole, contends that there are conclusory statements, information with no rational nexus to the Defendant and unverified information.

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. "In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 1203.

In *United States v. Nolan*, 199 F.3d 1180 (10th Cir. 1999), the court observed that "[b]ecause of the 'strong preference' for searches conducted pursuant to a warrant, the Supreme Court has instructed us to pay 'great deference' to a magistrate judge's determination of probable cause." *Id.*, at 1182, *citing Illinois v. Gates*, 462 U.S. 213, 236 (1983), see also *United States v. Renigar*, 613 F.3d 990, 993-94 (10th Cir. 2010). In this regard, a court's deferential review of the magistrate's issuance of the search warrant is merely one to "ensure that the magistrate judge  had a 'substantial basis' for concluding that the affidavit in support of the warrant established probable cause." *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Nolan*, 199 F.3d at 1182, *quoting Gates*, at 238. Accordingly, when exercising common sense, the issuing judge is entitled to go beyond the averred facts in making reasonable inferences from those facts. *United States v. Grimmett*, 439 F.3d 1263 (10th Cir. 2006).

"Probable cause means that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001), quoting *Gates*, 462 U.S. at 238. "[T]he defendant bears the burden of 'proving a factual nexus' between the Fourth Amendment and the seizure of the evidence sought to be suppressed." *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (citations omitted). "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005), *citing United States v. Rice*, 358 F.3d 1268, 1274 (10th Cir. 2004). An issuing judge is entitled to "draw reasonable inferences from the material provided in the warrant application." *Tisdale*, 248 F.3d at 971 (citations omitted). This court must uphold the warrants in question as long as the magistrate had a "substantial basis for ... concluding that a search would uncover evidence of wrongdoing." *Grimmett*, 439 F.3d at 1270, *quoting Gates*, 462 U.S. at 236.

"[P]robable cause requires a nexus between the place to be searched and the items to be seized." *Nolan*, 199 F.3d at 1183, *citing United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). "To establish the required nexus, the affidavit supporting the search warrant <u>need not</u> contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *Id.* (emphasis added). For example, in *United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986), the court held an affidavit sufficient to justify the search of a home where the affidavit stated that the defendant was a member of drug trafficking conspiracy and that members of drug conspiracies often maintain records of their activities, even though the affidavit failed to specify where such records would be kept. *Id.* at 382. The court held that, "It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal

observations that a defendant did keep such records at his residence." *Id., citing United States v. Williams*, 897 F.2d 1034, 1039 n. 2 (10th Cir. 1990).

In this case, the affidavit is replete with facts based upon verified information supporting probable cause. Case law clearly provides that an anonymous tip, by itself, can be sufficient alone for probable cause. See, e.g., *United States v. Hauk*, 412 F.3d 1179 (10th Cir. 2005) (Reliance on an anonymous tip is justified when the tip contains "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.") (citations omitted). However, in this case, SA Harnish did not merely take the anonymous tip at face value but sought to corroborate almost every aspect of the tipsters information.

SA Harnish corroborated the information that a female that lived across from Safeway in Sheridan that drove a gray Durango and a blue Expedition by actually locating a gray Dodge Durango and a blue Ford Expedition parked across from Safeway at 154 Coffeen Ave in Sheridan. SA Harnish, checking registration, found that the vehicles were registered to a female, Kimberly Perkins, who was observed driving to Shipton's Big R. Police surveillance also confirmed that the blue Ford Expedition was being driven by a Hispanic male and seen parked in front of 456 East Burkitt, Sheridan, Wyoming. On March 24, 2010, a traffic stop was conducted on the blue Ford Expedition, which confirmed that it was being driven by a Hispanic male identified as Miguel Angel Ordaz, who was a known member of the Fresno Bulldog Gang and a suspect in a homicide in Fresno, California - this corroborated the tipsters information concerning one of the co-conspirators being a member of a street gang and being a California homicide suspect.

SA Harnish further corroborated that the female, who was identified as Perkins, that lived across the street from Safeway and was in fact receiving packages sent from Fresno, California at Shipton's Big R. Subpoenaed information further confirmed that these packages had also been sent

to "Rivera" at 456 East Burkitt in Sheridan Wyoming, and that Defendant Ordaz utilized the name of "Isaias Rivera". SA Harnish went further, providing the magistrate with further evidence beyond just corroborating the anonymous tip. SA Harnish developed a confidential informant that had first hand knowledge that multiple packages containing methamphetamine were sent to Shipton's Big R from Fresno California.

The Defendant contends that the CI provided inconsistent information concerning firearms. However, in the context of all of the detailed information the CI provided, it is not the type of inconsistency that would completely discredit all the information the CI previously provided nor does it rise to the level where the magistrate would have determined that there was no probable cause. As stated in *Illinois v. Gates*, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233. Specifically, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir.2000).

In this instance, SA Harnish should be commended for fully disclosing all relevant facts as it related to the CI and the firearms as he could have easily omitted such information. And, since SA Harnish did disclose this information to the magistrate, there is no reason to believe that the magistrate did not consider it when making his determination - likely, the magistrate determined that the CI's information, given the amount of details the CI provided, was wholly accurate but that the CI may have felt threatened by the Defendant or co-conspirators.

Nonetheless, SA Harnish had information from a different CI that corroborated information concerning the Defendant possessing firearms at his residence. This separate CI confirmed seeing the Defendant with very specific descriptions of the firearms, which were located during the execution

of the search warrant. This second CI also provided specific information that there were notes related to drug activities kept on a yellow pad next to the bed. A third CI further corroborated the Defendant's drug activities, the Defendant's place of residence and his possession of firearms. Finally, as if that isn't enough, another witness provided information indicating that the Defendant likely obtained a firearm from his drug supplier.

Thus, in addition to corroborating the anonymous tip, SA Harnish developed information independent of the tip through surveillance, confidential informants, subpoenas and witness interviews that clearly established probable cause. See *Gates*, 462 U.S. at 234 ("[I]f we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case."). While the Defendant argues that mere possession of firearms or a yellow pad is not a crime, the Defendant misses the point - the relevant issue is whether there is a substantial basis for concluding that taking a practical, common-sense decision whether, given all the totality of the circumstances set forth in the affidavit, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. See *United States v. Artez,* 389 F.3d 1106 (10th Cir. 2004). In this case, it clearly does.

Finally, the Defendant alleges that neither the magistrate nor the officer could have relied upon one of the CI's allegedly contradictory statement (which, as pointed out, is not contradictory). On this basis, the Defendant seeks an evidentiary hearing. (See Def. Motion to Suppress, p. 11).

Although the Defendant does not cite *Franks v. Delaware*, 484 U.S. 154 (1978), he is essentially seeking a *Franks* hearing. Under *Franks v. Delaware*, a defendant may request an evidentiary hearing regarding the veracity of a search warrant affidavit. 438 U.S. at 171-72. However, before the defendant will be entitled to such a hearing, the defendant must allege deliberate

falsehood or reckless disregard for the truth, and those allegations *must* be accompanied by an offer of proof. *Id.* at 171 (emphasis added); see also *United States v. Artez,* 389 F.3d at 116 (discussing *Franks* in the context of an analysis under *Illinois v. Gates*). Affidavits of witnesses should be provided to the court or their absence satisfactorily explained. *Id.* Allegations of negligence or innocent mistake are insufficient. *Id.* "The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Avery,* 295 F.3d at 1166. If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause. *Franks*, 438 U.S. at 171-72.

Although the Defendant peppers his arguments with various colorful adjectives, it does not detract from the stark fact that the Defendant presents absolutely no evidence that any of the information was a deliberate falsehood or reckless disregard for the truth. In this instance, SA Harnish fully disclosed all relevant facts - including the fact that, according to one CI, the Defendant had gotten rid of the firearms - this CI then stopped communicating with law enforcement. This hardy demonstrates a deliberate falsehood or reckless disregard for the truth but is indicative of SA Harnish's forthright honesty with the court. The Defendant utterly fails to satisfy the *Franks* standard for an evidentiary hearing.

Nonetheless, even assuming that such information improperly tainted an affidavit, the court has stated: "we may disregard [that] material ... and ask whether sufficient facts remain to establish probable cause." *United States v. Cusumano,* 83 F.3d 1247, 1250 (10th Cir.1996) (en banc); see also Franks, 438 U.S. at 171-72 (even after a showing of deliberate falsehood or reckless disregard for the truth, the defendant must additionally demonstrate that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause). In this instance, there is no such taint

since there has been no showing made of any deliberate falsehood or reckless disregard for the truth.

But, of there were, sufficient facts remained to establish probable cause and the Defendant has failed

to show otherwise.

### B.  Good Faith[5]

"The exclusionary rule is a judicially-created remedy rather than a personal constitutional right

of the aggrieved individual."  *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990),

*citing United States v. Leon*, 468 U.S. 897, 906 (1984).  In *Leon*, "the Supreme Court modified the

fourth amendment's exclusionary rule to provide that evidence seized under a warrant later found to

be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance

on the warrant."  *Corral-Corral*, 899 F.2d at 932, *citing Leon*, 468 U.S. at 913.  In *Leon*, the Court

"mandated that the exclusionary rule be invoked only in those 'unusual' cases in which its purpose

would be served, i.e., in which it would deter police misconduct."  *Corral-Corral*, 899 F.3d at 932,

*citing United States v. Medlin*, 798 F.2d 407, 409 (10th Cir. 1986).  If a warrant is not supported by

probable cause, the evidence seized pursuant to the warrant "need not be suppressed if the executing

officer acted with an objective good-faith belief that the warrant was properly issued by a neutral

magistrate."  *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir.2000) (citing *Leon,* 468 U.S.

at 922).

When an officer searches pursuant to a warrant, *Leon* generally requires we presume the

officer acted in good-faith reliance upon the warrant.  *United States v. Harrison,* 566 F.3d 1254, 1256

(10th Cir.2009); *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985).  "It is only when [an

---

[5]A reviewing court has discretion to skip past the probable cause issue and decide a case
on good faith alone.  *See, e.g., Nolan*, 199 F.3d at 1184.

officer's] reliance was wholly unwarranted that good faith is absent." *Cardall,* 773 F.2d at 1133. But this presumption is not absolute. *Harrison,* 566 F.3d at 1256.

As the Tenth Circuit has reiterated many times, a warrant subsequently determined to lack probable cause demands suppression of the resulting evidence in four situations: (1) when "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his 'reckless disregard of the truth'"; (2) "when the 'issuing magistrate wholly abandons his judicial role'"; (3) "when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and, (4) "when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *Danhauer,* 229 F.3d at 1007 (quoting *Leon,* 468 U.S. at 923). "The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith. While this presumption is not an absolute, it must carry some weight." *Corral-Corral,* 899 F.2d at 938 (quoting *United States v. Cardall,* 733 F.2d 1128, 1133 (10th Cir. 1985)). "[P]olice officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." *Id.,* at 939.

The Defendant in this case argues the affidavit so lacked indicia of probable cause that the executing officer's belief in its existence was entirely unreasonable, precluding the application of *Leon*'s good-faith exception, because it failed to establish he was involved in any criminal activity or establish a nexus between the evidence sought and his home, and improperly relied on a confidential informant.

The presumption that officers executed a search warrant in objective good faith can be overcome if the Defendant demonstrates that the warrant was "'based on an affidavit so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Henderson,* 595 F.3d 1198, 1201 (10th Cir.2010) (quoting *Leon,* 468 U.S. at 923).   An officer's reliance on a magistrate's issuance of a warrant is only "'entirely unreasonable'" when the affidavit is "'*devoid* of factual support.'"  *Henderson,* 595 F.3d at 1201-02 (quoting *Cardall,* 773 F.2d at 1133).  An affidavit is not devoid of factual support "if it 'establishe[s] a minimally sufficient nexus between the illegal activity and the place to be searched.'"  *Id.* at 1202 (quoting *United States v. Gonzales,* 399 F.3d 1225, 1230-31 (10th Cir.2005)).

This minimal nexus requirement <u>does not</u> require that "hard evidence or 'personal knowledge of illegal activity' link a defendant's suspected unlawful activity to his home." *United States v. Biglow,* 562 F.3d 1272, 1279 (10th Cir.2009) (emphasis added).   On the contrary, an affidavit establishes a sufficient nexus when it "'describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place."  *Id.* (quoting *United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 874 (10th Cir.1992)).

"[F]actors relevant to our nexus analysis include" but are not limited to "(1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Id.* Furthermore, magistrates may permissibly rely on law enforcement officer's opinions regarding where contraband or evidence may be kept.  *Id.*  And, as the Tenth Circuit has said before, "it is merely common sense that a drug supplier will keep evidence of his crimes at his home." *United States v. Sanchez,* 555 F.3d 910, 914 (10th Cir.2009) ("[W]hen police officers have probable cause to believe that a suspect is involved in drug distribution, there is also probable cause to believe that additional evidence of drug-trafficking crimes (such as drug paraphernalia or sales records) will be found in his residence.").

In the present case, assuming that there was insufficient probable cause to support the warrant, Defendant's motion to suppress must be denied since SA Harnish received the warrant in good faith and it was reasonable for him to rely upon it.   SA Harnish did as the law desires him to do – he secured a search warrant upon specific facts from a neutral and detached magistrate.   But even prior to doing that, he independently sought to corroborate information and further sought out the advice and review of the United States Attorney's Office.   In such circumstances--even where no probable cause is found to support a warrant, the Tenth Circuit has recognized that the exclusionary rule's purpose is not served.

Where there is no police misconduct to deter, *and none has been alleged here*, suppression simply keeps important evidence from the fact-finder.   See, e.g., *United States v. Danhauer*, 229 F.3d at 1004-07 (affidavit failed to show probable cause to search a residence in a drug case, but officers acted in good faith so as to defeat suppression of evidence in that the affidavit "was not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the magistrate's authorization"); *Rowland*, 145 F.3d at 1205-1208 (affidavit failed to show probable cause to search a residence in child pornography case, but officers acted in good faith as "the affidavit as a whole was not a bare bones affidavit, containing only conclusory statements and completely devoid of factual support) (citations omitted).   Further, given the various factors to be considered,[6] along with the magistrate's reliance on SA Harnish's experience and training in investigating drug cases, it cannot be said that the affidavit was completely devoid of factual support

---

[6] (1) the type of crime at issue - conspiracy to distribute and possess with intent to distribute methamphetamine, and possession of firearms by a known street gang, (2) the extent of a suspect's opportunity for concealment - high given the nature of methamphetamine, (3) the nature of the evidence sought - records, drugs, guns, paraphernalia, gang association and drug proceeds, and (4) all reasonable inferences as to where a criminal would likely keep such evidence - vehicles, residence and on their person.

or so lacking in indicia of probable cause as to be unreasonable to a degree that a reasonable person would believe it is invalid.

## IV.    CONCLUSION

For all reasons stated, the affidavit in support of the application for the search warrant was supported by probable cause.  Furthermore, SA Harnish acted in good faith in reasonable reliance upon the search warrants issued by a neutral and detached magistrate. Moreover, the Defendant failed to satisfy the *Franks* standard for an evidentiary hearing - there has been no showing of a deliberate falsehood or reckless disregard for the truth.  As a result, the Defendant's motion to suppress should be denied and the Defendant's motion for a evidentiary hearing should be denied.

**DATED** this 26th day of May, 2011.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney

By: _____
    DARRELL L. FUN
    Assistant United States Attorney

# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

In the Matter of the Search of:

**1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);**

**2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and**

**3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.**

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: _____

## SEALED

I, Travis Harnish, being duly sworn depose and say:

I am a Special Agent of the Wyoming Division of Criminal Investigation and have reason to believe that in the District of Wyoming, on the person, property or premises known as:

### SEE ATTACHMENT "A"

in the District of Wyoming, there is now concealed certain property, namely:

### SEE ATTACHMENT "B"

which is evidence of the crime, fruits of the crime, or instruments of the crime, concerning a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846 and Title 18, United States Code, Sections 924(c)(1) and 1956(a) and (h).

The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT HARNISH

Continued on the attached sheet and made a part hereof:   __XX__ Yes   _____ No

Signature of Affiant, Travis Harnish

GOVERNMENT
EXHIBIT

1

Sworn to before me and subscribed in my presence,

_____11|19/10_____2:36 PM___   at   Sheridan, Wyoming
Date                                        City and State

David C. Smith
U.S. Magistrate Judge
_____
Name & Title of Judicial Officer          Signature of Judicial Officer

### ATTACHMENT "A"

1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);

2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and

3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.

## ATTACHMENT "B"

Evidence of membership, association, or affiliation with any gang. Said evidence to include but not limited to: any reference to the Fresno, California street gang, the Bulldogs. Said items to include any drawings or miscellaneous writings or graffiti depicting gang members names, initials, logos, monikers, slogans or containing mention of street gang membership, association, affiliation activity or identity; any paintings, drawings, videos, photographs, computer flash drives, compact disks, computer hard drives, media drives and photo albums depicting persons, vehicles, weapons, or locations which may appear upon observation to be relevant to the question of gang membership association, or affiliation, or which may depict items believed to be evidence in the case being investigated with the warrant, or which may depict evidence of any criminal activity; any newspaper clippings tending to relate details of or reference to gang related crimes, including the distribution of controlled substances; any addresses books, lists of, or single reference to addresses or telephone numbers of persons who may be determined to belong to, or be affiliated with any street gangs; books, records, receipts, notes, ledgers and other papers relating to the distribution, manufacture, storage or transportation of controlled substances; note books, telephone billing records, stored records from land line telephones, cellular telephones and Caller ID boxes, along with papers reflecting names, addresses, telephone numbers and other contact or identification data relating to others involved in the possession, distribution, manufacture or transportation of controlled substances; currency, checks and other negotiable instruments, along with transaction records, relating to controlled substances income, expenditures and debts, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks and check registers; items of personal property that tend to identify the person(s) on the premises, occupancy, control or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, documents indicating travel, such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills; firearms and other dangerous weapons.

## AFFIDAVIT OF TRAVIS HARNISH FOR SEARCH WARRANT

The undersigned, being of lawful age and upon his oath first duly sworn, deposes and says:

The affiant is employed as a Special Agent, Division of Criminal Investigation, Office of the Attorney General, State of Wyoming. The affiant has reason to believe that

     (X)    on the person of Miguel Angel Ordaz (AKA Isaias Rivera, AKA Tomas Hueso)
     (X)    on the premises of 456 East Burkitt, Sheridan Wyoming
     (X)    in the vehicle, a dark blue Ford Expedition, Wyoming passenger plate
             3-23996.

there is being concealed, certain property, to-wit: evidence of membership, association, or affiliation with any gang. Said evidence to include but not limited to: any reference to the Fresno, California street gang, the Bulldogs. Said items to include any drawings or miscellaneous writings or graffiti depicting gang members names, initials, logos, monikers, slogans or containing mention of street gang membership, association, affiliation activity or identity; any paintings, drawings, videos, photographs, computer flash drives, compact disks, computer hard drives, media drives and photo albums depicting persons, vehicles, weapons, or locations which may appear upon observation to be relevant to the question of gang membership association, or affiliation, or which may depict items believed to be evidence in the case being investigated with the warrant, or which may depict evidence of any criminal activity; any newspaper clippings tending to relate details of or reference to gang related crimes, including the distribution of controlled substances; any addresses books, lists of, or single reference to addresses or telephone numbers of persons who may be determined to belong to, or be affiliated with any street gangs; books, records, receipts, notes, ledgers and other papers relating to the distribution, manufacture, storage or transportation of controlled substances; note books, telephone billing records, stored records from land line telephones, cellular telephones and Caller ID boxes, along with papers reflecting names, addresses, telephone numbers and other contact or identification data relating to others involved in the possession, distribution, manufacture or transportation of controlled substances; currency, checks and other negotiable instruments, along with transaction records, relating to controlled substances income, expenditures and debts, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks and check registers; items of personal property that tend to identify the person(s) on the premises, occupancy, control or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, documents indicating travel, such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills; firearms and other dangerous weapons.

WHICH:     (X) is stolen or embezzled in violation of law.
                  (X) is designed or intended for use which is or has been used as a means of committing a criminal offense.
                  (X) is possessed, controlled, or designed or intended for use or which is or has been used in violation of any law.
                  (X) tends to show a crime has been committed.
                  (X) constitutes evidence which tends to show that a particular person has committed a crime.

The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

1.  Your affiant is currently assigned as a Special Agent for the Wyoming division of Criminal Investigation, assigned to the North East Enforcement Team, and is a peace officer as defined in Wyoming State Statutes 9-1-611 (a) and 9-1-611 (b) (iv) and Wyoming Statute 7-2-101 (a) (iv) (D) and is thus accorded the power and authority of an agent, as defined in Wyoming State Statute 9-1-618 (b) (ii), which provides in pertinent part that the "...Division (and it's Agents) shall investigate suspected violations of the Wyoming Controlled Substance Act of 1971, 35-7-1001 et seq., and (shall) perform all the duties of a law enforcement officer under this act."

2.  Your affiant was employed at the Sheridan Police Department as a Communication Officer / Supervisor for approximately six years. Your affiant was then employed as a Sheridan Police Officer for four years until becoming employed at the Sheridan County Sheriff's Office as a Deputy Sheriff. Your affiant has been employed at the Sheridan County Sheriff's Office for five years and four months. Your Affiant has been assigned to the Wyoming Division of Criminal Investigation since March of 2009. Your affiant has been involved in the investigation of both state and federal controlled substance violations, including street level undercover purchases, execution of search warrants, major level conspiracy investigations and domestic marijuana growing operations. Your affiant has made numerous arrests for controlled substance violations, which have resulted in both misdemeanor and felony convictions in state and federal courts.

3.  Your affiant has received training related to the investigation of controlled substance violations from the Wyoming Law Enforcement Academy, Wyoming Division of Criminal Investigation and the United States Drug Enforcement Administration. The training has covered subjects ranging from simple drug identification to major drug conspiracy investigations.

4.  Based upon the above, your affiant knows the following:

    A.  That often times controlled substance traffickers / distributors maintain on hand large amounts of U.S. Currency in order to finance their ongoing controlled substance business;

    B.  That controlled substance traffickers / distributors often maintain items such as driver's licenses, phone bills, rent receipts, checks, canceled mail envelopes, utility bills, ledgers, and personal written or electronic diaries, which are commonly used to help identify the person or persons responsible for a crime, and used in court during prosecution of those person;

    C.  That controlled substance traffickers / distributors often maintain books, records, receipts, notes, ledgers, money orders, money transfer receipts such as Western Union, MoneyGram, and Greendot, and other documents;

    D.  That controlled substances traffickers/distributors commonly maintain address or telephone number books and documents which reflect names, addresses and/or telephone numbers of their associates in the trafficking/distribution organization. Furthermore, that it is common for those involved in the distribution of

controlled substances to utilize cellular telephones in the course of their business and that they often program the telephone numbers and/or other identifying information of individuals who are also buying and/or selling controlled substances in those cellular telephones;

E. That controlled substance traffickers/distributors who have access to a computer system, often use this computer to maintain records, receipts, notes, etc., of their illegal enterprise;

F. That it is common for controlled substance traffickers/distributors to conceal proceeds from the distribution of controlled substances and/or records of locations of proceeds as well as contraband within their residences;

G. That controlled substance traffickers/distributors take or cause to be taken photographs of themselves, their associates, their property and their product, and the photographs are usually maintained at the residences;

H. That it is a common practice for controlled substance traffickers/distributors to maintain records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances;

I. That based on the affiant's training and experience, the affiant knows that controlled substance traffickers/distributors have in their possession or control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons and that the weapons are used to protect and secure a controlled substance trafficker/distributor;

J. That based on your affiant's training, experience, and information provided by other law Enforcement Officers who deal directly with organized gangs, that members of organized gangs such as the Bulldogs often form small sects amongst the gang and conduct business with each other, such as the trafficking / distribution of methamphetamine and other violent crimes involving firearms.

5. The information contained herein is a result of information known by the Affiant as well as information provided to the Affiant by other Officers, Investigators, and/or Special Agents who the Affiant knows to be reliable.

6. Law Enforcement Officers from agencies in Sheridan County have been receiving information regarding Miguel Angel Ordaz and/or Ordaz's associates being involved in the use and distribution of methamphetamine for the past nine months.

7. On February 18, 2010, your affiant received an anonymous tip that three Hispanic "gang" members were involved in selling / distributing large quantities of methamphetamine in the Sheridan area. On February 19, 2010, your affiant received more information from the anonymous source that the involved subjects were receiving large quantities of methamphetamine through the mail. The involved subjects went by the names of "Rob", "Noe", and "Isaias". One of these subjects was a homicide suspect in California. "Rob",

"Noe" and "Isaias" were members of the Bulldog Gang out of Fresno California. The anonymous source stated that a female subject who lived across from Safeway in Sheridan that drove a gray Durango and a blue Expedition received the packages at Shipton's Big R in Sheridan containing methamphetamine and stored weapons for the "gang" members.

8. Your affiant and other agents of the Wyoming Division of Criminal Investigation located a gray Dodge Durango and a blue Ford Expedition parked across from Safeway at 154 Coffeen Ave in Sheridan. The vehicles were registered to Kimberly Perkins. On several occasions your affiant observed Perkins drive the Gray Dodge Durango between 154 Coffeen Ave and Shipton's Big R in Sheridan. Agents observed the blue Ford Expedition on several occasions being driven by a Hispanic male. The Expedition was often parked in front of 456 East Burkitt, Sheridan, Wyoming.

9. On March 24, 2010, a traffic stop was conducted on the blue Ford Expedition. The Hispanic male driver was identified as Miguel Angel Ordaz. Following the identification of Ordaz, your affiant learned that Ordaz was a confirmed member of the Bulldog Gang out of Fresno California. Your affiant also learned that Ordaz was the suspect in a homicide by firearm in Fresno, California.

10. A subpoena to UPS confirmed multiple packages were being sent from Fresno California to Shipton's Big R in Sheridan. Several of these packages had been signed for by "Perkins". Packages were also sent to 463 Coffeen Ave and signed for by "Rivera" (Miguel Angel Ordaz has known aka's of Isaias Rivera and Tomas Hueso). A subsequent subpoena confirmed that packages had also been sent to "Rivera" at 456 East Burkitt in Sheridan Wyoming.

11. Subpoena's of Western Union and MoneyGram transactions confirmed that Ordaz and other members of this drug organization wired money to subjects, some of whom are known members of the Bulldog Gang, in Fresno, California corresponding with package arrival dates in Sheridan, Wyoming.

12. On September 9, 2010, Agents contacted a confidential informant, hereafter referred to as CI 2010-051, in reference to packages being received at Shipton's Big R in Sheridan Wyoming. CI 2010-051 confirmed that multiple packages containing methamphetamine were sent to Shipton's Big R in Sheridan from Fresno California. CI estimated that there were between twenty-four (24) and thirty-two (32) packages sent to CI 2010-051 at Shipton's Big R. CI 2010-051 observed Ordaz open a couple of these packages. CI 2010-051 observed Ordaz remove a large five (5) wick style candle from the package, break it open, and remove multiple baggies of methamphetamine from the candles. CI 2010-051 estimated each baggy to be one (1) to two (2) ounces of methamphetamine. CI 2010-051 had sent money via Western union or MoneyGram for Ordaz to California at last one (1) time. CI 2010-51 had stored some of Ordaz's guns at CI 2010-051's residence for Ordaz. CI 2010-051 described the guns as a handgun, a shotgun, and a long rifle. CI 2010-051 indicated that the guns were now in Ordaz's residence and placed in locations around the residence, such as Ordaz's bedroom and living room. Later CI 2010-051 told agents that Ordaz had gotten rid of his guns. CI 2010-051 then ended all contact with agents. CI 2010-051 is a known informant that has provided credible information regarding this case that has been corroborated through the statements of other confidential informants and subpoenas of UPS records.

13. On September 15, 2010 agents interviewed a confidential informant, hereafter referred to as CI 2010-057. CI 2010-057 received methamphetamine from Ordaz on one occasion. CI 2010-057 had seen Ordaz in possession of several firearms, including an MP5 assault rifle and several different handguns early in 2010. CI 2010-057 is a known informant that has provided credible information regarding this case that has been corroborated through statements made by other confidential informants, search warrants, and recorded jail calls.

14. On October 1, 2010 your affiant interviewed a confidential informant, hereafter referred to as CI 2010-063. CI 2010-063 stated that Ordaz kept a yellow note pad near his bed. The yellow note pad listed drug transactions and drug debts owed to Ordaz. CI 2010-063 last saw the yellow note pad at Ordaz's residence, 456 East Burkitt in Sheridan Wyoming around the beginning of September. CI 2010-063 stated that Ordaz has several firearms. CI 2010-063 described Ordaz as being a "gun collector". Ordaz got a laser sight for a large handgun that Ordaz had. CI 2010-063 observed several firearms including the handgun with the laser sight in Ordaz's house in August of 2010. CI observed a handgun (revolver) with a "pretty" handle on, a rifle, and a semi auto handgun with a matt silver finish. CI 2010-063 is a known informant that has provided credible information regarding this case which has been corroborated through statements made by other confidential informants and Law Enforcement records.

15. On October 14, 2010, your affiant participated in a proffer interview with Jason Lyles. Lyles advised agents that his supplier of methamphetamine had a substantial drug debt to Ordaz,. Lyles believed the debt to be around $6000. Lyles told agents that his supplier had possibly given Ordaz a handgun, but did not know when. Lyles described the handgun as a black 9mm with ivory grips.

# UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

In the Matter of the Search of:

**1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);**

**2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and**

**3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.**

## SEARCH WARRANT

CASE NUMBER: _____

## SEALED

TO:  **Travis Harnish** and any Authorized Officer of the United States

Affidavit having been made before me by **Travis Harnish**, who has reason to believe that in the District of Wyoming on the property or premises known as:  **SEE ATTACHMENT "A"** there is now concealed a certain property, namely:  **SEE ATTACHMENT "B"** which is evidence of a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846 and Title 18, United States Code, Sections924(c)(1) and 1956(a) and (h).

I am satisfied that the affidavit and any recorded testimony establish probable cause to believe that the property so described is now concealed on the premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _Dec. 3, 2010_ , (not to exceed 14 days) the place named above for the property specified, serving this warrant and making the search in the daytime - 6:00 A.M. to 10:00 P.M. - and if the property be found there to seize same, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to **Magistrate Beaman** as required by law.

Sworn to before me and subscribed in my presence,

_11|19|10    2:36 PM_ at     Sheridan, Wyoming

Date                                City and State

David C. Smith
U.S. Magistrate Judge

Name & Title of Judicial Officer                Signature of Judicial Officer



GOVERNMENT
EXHIBIT

Z

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 11-19-2010 | 11-22-2010   9:00 Am | Enma Florez  at 856 E Barlow A |

INVENTORY MADE IN THE PRESENCE OF ~~~~~~  Jason T Ruby   Travis Hammond  Travis Harnish

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

See Attached list.

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant

_Travis J Harnish_

Subscribed, sworn to, and returned before me this date

_David Smith_                 11/25/10

U.S. Judge or Magistrate          Date

# ATTACHMENT "A"

1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);

2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and

3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.

## ATTACHMENT "B"

Evidence of membership, association, or affiliation with any gang. Said evidence to include but not limited to: any reference to the Fresno, California street gang, the Bulldogs. Said items to include any drawings or miscellaneous writings or graffiti depicting gang members names, initials, logos, monikers, slogans or containing mention of street gang membership, association, affiliation activity or identity; any paintings, drawings, videos, photographs, computer flash drives, compact disks, computer hard drives, media drives and photo albums depicting persons, vehicles, weapons, or locations which may appear upon observation to be relevant to the question of gang membership association, or affiliation, or which may depict items believed to be evidence in the case being investigated with the warrant, or which may depict evidence of any criminal activity; any newspaper clippings tending to relate details of or reference to gang related crimes, including the distribution of controlled substances; any addresses books, lists of, or single reference to addresses or telephone numbers of persons who may be determined to belong to, or be affiliated with any street gangs; books, records, receipts, notes, ledgers and other papers relating to the distribution, manufacture, storage or transportation of controlled substances; note books, telephone billing records, stored records from land line telephones, cellular telephones and Caller ID boxes, along with papers reflecting names, addresses, telephone numbers and other contact or identification data relating to others involved in the possession, distribution, manufacture or transportation of controlled substances; currency, checks and other negotiable instruments, along with transaction records, relating to controlled substances income, expenditures and debts, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks and check registers; items of personal property that tend to identify the person(s) on the premises, occupancy, control or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, documents indicating travel, such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills; firearms and other dangerous weapons.

**STATE OF WYOMING**
**OFFICE OF THE ATTORNEY GENERAL**
**DIVISION OF CRIMINAL INVESTIGATION**

**RECEIPT**

| ITEM# | DESCRIPTION | QUANTITY |
|---|---|---|
| | 100 series items located in Dining Room | |
| 101 | Lowman 9mm pistol 124 grain (missing 15 RDS) | 1 |
| 102 | Box viridian laser site | 1 |
| 103 | (2) clean bore 38 auto ammunition | 2 |
| 104 | Check book Isaias Rivera / one w/ blue cover | 2 |
| 105 | 3 photographs in frames / several loose | 3 |
| 106 | Misc paperwork from shoebox | 1 |
| 107 | Samsung Straight Talk cell phone (coat pocket) with charger | 1 |
| 108 | LG Straight talk cell phone (coat pocket) | 1 |
| 109 | 2 Green dot cards to thanks Hueso / emma ?lines | 2 |
| 110 | ~~1/2 thick notebook~~ | ~~1~~ |
| 111 | Fuji Film Camera Blk  Finepix  J38 | 1 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Received From _456 E. Burkitt_   Date: _11-22-10_   Page Number: _1_

Received By _S.A. Ruby_   Case Number: _2208-0035_

REV: 03-88

**STATE OF WYOMING**
**OFFICE OF THE ATTORNEY GENERAL**
**DIVISION OF CRIMINAL INVESTIGATION**

RECEIPT ·

| ITEM# | DESCRIPTION | QUANTITY |
|---|---|---|
| | 200 Series located in Living Room | |
| 201 | BLK Canvas "High Sierra" Rolling Duffle Bag | |
| 201 A | Plastic Baggie containg large quantity of crystaline material | 1 |
| 201 B | Plastic zip lock w/ plastic baggie w/white crystaline material | 1 |
| 201 C | BLK leather case containg a frankfurt arsenal digital scale | 1 |
| 201 C | + metal tray w/ white crystaline material | 1 |
| 201 D | Banana clip , misc gun parts including | |
| | Bolt assembly , catech , foward rail/Kidend , | |
| | Barrel assembly , Buttstock , clip , lower reciever | |
| 201 E | Frwt of loons plastic sack containg Foward light , | |
| | pistol grip , Norinco scope | |
| 201 F | Plastic baggie containg misc ammunition | 1 |
| 201 G | plastic box/carrier w/ misc ammunition | 2 |
| 201 H | Blk canvas "Rossi" containg 2 barrels .243  20 ga | 2 |
| 202 | Framed photo w/ 3 males | 1 |
| 203 | 5N/516987  SKS | 1 |
| 204 | SN SP873848 / SN S2022243YBS  Rossi  22 LR | 1 |
| 205 | Red Sweatshirt | 1 |
| 206 | Birt certificates list Mycl Oolez as father / pic gary photo | 1 |
| 207 | Red Bandanna and Bull dog ornament | 1 |
| 208 | Tamrs gun box (2) boxes empty shell cases | 1 |
| | .308 | |

Received From _456 E Bockitt_  Date: _11-20-10_  Page Number: _2_

Received By _S.A. Ruby_  Case Number: _2008 0035_

REV: 03-88

**STATE OF WYOMING**
**OFFICE OF THE ATTORNEY GENERAL**
**DIVISION OF CRIMINAL INVESTIGATION**

**RECEIPT**

| ITEM# | DESCRIPTION | QUANTITY |
|-------|-------------|----------|
| 209 | "ITS A Dogg Thang" pic | 1 |
| 210 | City of Sheridan / MOU bril   Isaac Revera | 2 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Received From _456 E. Burkitt_ Date: _11-22-10_  Page Number: _3_

Received By _S.A. Ruby_  Case Number: _2008-0035_

REV: 03-88

**STATE OF WYOMING**
**OFFICE OF THE ATTORNEY GENERAL**
**DIVISION OF CRIMINAL INVESTIGATION**

**RECEIPT**

| ITEM# | DESCRIPTION | QUANTITY |
|-------|-------------|----------|
|  | 300 series locked in TV Room |  |
| 301 | Blk plastic "RAM-LINE" stock | 1 |
| 302 | (2) Stuffed Bulldogs | 2 |
| 303 | Black Hawk Holster 1911 | 1 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Received From _SSC E. Burkett_ Date: _11-22-10_     Page Number: _4_

Received By _S. A. Ruby_     Case Number: _xxx-00x5_

REV: 03-88

STATE OF WYOMING
OFFICE OF THE ATTORNEY GENERAL
DIVISION OF CRIMINAL INVESTIGATION

RECEIPT

| ITEM# | DESCRIPTION | QUANTITY |
|---|---|---|
| | 400 Series Up Stair Bed room | |
| 401 | Taurus PT 1911 .38 Super SN BW799J3 W/mag 9 Rounds + Holster | 1 |
| 402 | Stevens model 200 .308 SN G601459 w/Tasco 3x9x40 Scope. | 1 |
| 403 | 1 magizine 9mm | 1 |
| 404 | photo album and Motrola phone | 1 |
| 405 | Taurus SN TA047072 PT 92 AFS w/Fully | 1 |
| | loaded mag and laser site | |
| 406 | MISC paperwork including Passports, Greendot Cbld card + credit report request | 1 |
| 407 | Samsung Cell phone Blue | 1 |
| 408 | Mexican passport, resident alean card, Drivers License photos | 1 |
| 401 A | loaded mag w/ 9 Rounds | 1 |
| 402 A | 8 .308 Rounds Located on rifle | 8 |
| 409 | Misc Gang photos | 7 |
| | 500 Series Located in Kitchen | |
| 501 | Knife w/ ankle holster | 1 |
| | | |
| | | |

Received From 456 E. Burkitt   Date: 11-22-10   Page Number: 5
Received By SA. Ruby   Case Number: 2008 0285

REV: 03-88

**STATE OF WYOMING**
**OFFICE OF THE ATTORNEY GENERAL**
**DIVISION OF CRIMINAL INVESTIGATION**

**RECEIPT**

| ITEM# | DESCRIPTION | QUANTITY |
|-------|-------------|----------|
| M01 | Misc paperwork taken from Center console | 1 |
| M02 | Misc paperwork taken from glove box | 1 |
| M03 | Remington Xleanbore 38 super automatic 13rds | 13 |
| M04 | LG cell phone / silver in color | 1 |
| M05 | Tow receipt Madera Police Dept | 1 |
| M06 | $1176 US currency | 1 |
| M07 | I way 250 c   GPS unit | 1 |
| M08 | 2 rounds 9mm Luger (front console) | 1 |
| M09 | 1 round 38 Special (back seat) | 1 |
| M010 | Misc Paperwork, Time sheets, Ticket, Breshear receipt | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Received From 3-23996 (WY PC) Date: 11-22-10       Page Number: 6

Received By S.A. Ruby       Case Number: _____

REV: 03-88