# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

In the Matter of the Search of:

1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);

2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and

3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: _____

**SEALED**

I, Travis Harnish, being duly sworn depose and say:

I am a Special Agent of the Wyoming Division of Criminal Investigation and have reason to believe that in the District of Wyoming, on the person, property or premises known as:

**SEE ATTACHMENT "A"**

in the District of Wyoming, there is now concealed certain property, namely:

**SEE ATTACHMENT "B"**

which is evidence of the crime, fruits of the crime, or instruments of the crime, concerning a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846 and Title 18, United States Code, Sections 924(c)(1) and 1956(a) and (h).

The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT HARNISH**

Continued on the attached sheet and made a part hereof:   XX  Yes   _____ No

_____
Signature of Affiant, Travis Harnish

GOVERNMENT EXHIBIT 1

Sworn to before me and subscribed in my presence,

| 11/19/10   2:36 PM | at | Sheridan, Wyoming |
|---|---|---|
| Date | | City and State |

| David C. Smith  U.S. Magistrate Judge | *[signature]* |
|---|---|
| Name & Title of Judicial Officer | Signature of Judicial Officer |

## ATTACHMENT "A"

1. On the person of Miguel Angel Ordaz (aka Isaias Rivera, aka Tomas Hueso);

2. On the premises of 456 East Burkitt, Sheridan, Wyoming; and

3. In the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.

## ATTACHMENT "B"

Evidence of membership, association, or affiliation with any gang. Said evidence to include but not limited to: any reference to the Fresno, California street gang, the Bulldogs. Said items to include any drawings or miscellaneous writings or graffiti depicting gang members names, initials, logos, monikers, slogans or containing mention of street gang membership, association, affiliation activity or identity; any paintings, drawings, videos, photographs, computer flash drives, compact disks, computer hard drives, media drives and photo albums depicting persons, vehicles, weapons, or locations which may appear upon observation to be relevant to the question of gang membership association, or affiliation, or which may depict items believed to be evidence in the case being investigated with the warrant, or which may depict evidence of any criminal activity; any newspaper clippings tending to relate details of or reference to gang related crimes, including the distribution of controlled substances; any addresses books, lists of, or single reference to addresses or telephone numbers of persons who may be determined to belong to, or be affiliated with any street gangs; books, records, receipts, notes, ledgers and other papers relating to the distribution, manufacture, storage or transportation of controlled substances; note books, telephone billing records, stored records from land line telephones, cellular telephones and Caller ID boxes, along with papers reflecting names, addresses, telephone numbers and other contact or identification data relating to others involved in the possession, distribution, manufacture or transportation of controlled substances; currency, checks and other negotiable instruments, along with transaction records, relating to controlled substances income, expenditures and debts, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks and check registers; items of personal property that tend to identify the person(s) on the premises, occupancy, control or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, documents indicating travel, such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills; firearms and other dangerous weapons.

## AFFIDAVIT OF TRAVIS HARNISH FOR SEARCH WARRANT

The undersigned, being of lawful age and upon his oath first duly sworn, deposes and says:

The affiant is employed as a Special Agent, Division of Criminal Investigation, Office of the Attorney General, State of Wyoming. The affiant has reason to believe that

- (X) on the person of Miguel Angel Ordaz (AKA Isaias Rivera, AKA Tomas Hueso)
- (X) on the premises of 456 East Burkitt, Sheridan Wyoming
- (X) in the vehicle, a dark blue Ford Expedition, Wyoming passenger plate 3-23996.

there is being concealed, certain property, to-wit: evidence of membership, association, or affiliation with any gang. Said evidence to include but not limited to: any reference to the Fresno, California street gang, the Bulldogs. Said items to include any drawings or miscellaneous writings or graffiti depicting gang members names, initials, logos, monikers, slogans or containing mention of street gang membership, association, affiliation activity or identity; any paintings, drawings, videos, photographs, computer flash drives, compact disks, computer hard drives, media drives and photo albums depicting persons, vehicles, weapons, or locations which may appear upon observation to be relevant to the question of gang membership association, or affiliation, or which may depict items believed to be evidence in the case being investigated with the warrant, or which may depict evidence of any criminal activity; any newspaper clippings tending to relate details of or reference to gang related crimes, including the distribution of controlled substances; any addresses books, lists of, or single reference to addresses or telephone numbers of persons who may be determined to belong to, or be affiliated with any street gangs; books, records, receipts, notes, ledgers and other papers relating to the distribution, manufacture, storage or transportation of controlled substances; note books, telephone billing records, stored records from land line telephones, cellular telephones and Caller ID boxes, along with papers reflecting names, addresses, telephone numbers and other contact or identification data relating to others involved in the possession, distribution, manufacture or transportation of controlled substances; currency, checks and other negotiable instruments, along with transaction records, relating to controlled substances income, expenditures and debts, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks and check registers; items of personal property that tend to identify the person(s) on the premises, occupancy, control or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, documents indicating travel, such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills; firearms and other dangerous weapons.

WHICH:   (X) is stolen or embezzled in violation of law.
(X) is designed or intended for use which is or has been used as a means of committing a criminal offense.
(X) is possessed, controlled, or designed or intended for use or which is or has been used in violation of any law.
(X) tends to show a crime has been committed.
(X) constitutes evidence which tends to show that a particular person has committed a crime.

The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

1. Your affiant is currently assigned as a Special Agent for the Wyoming division of Criminal Investigation, assigned to the North East Enforcement Team, and is a peace officer as defined in Wyoming State Statutes 9-1-611 (a) and 9-1-611 (b) (iv) and Wyoming Statute 7-2-101 (a) (iv) (D) and is thus accorded the power and authority of an agent, as defined in Wyoming State Statute 9-1-618 (b) (ii), which provides in pertinent part that the "...Division (and it's Agents) shall investigate suspected violations of the Wyoming Controlled Substance Act of 1971, 35-7-1001 et seq., and (shall) perform all the duties of a law enforcement officer under this act."

2. Your affiant was employed at the Sheridan Police Department as a Communication Officer / Supervisor for approximately six years. Your affiant was then employed as a Sheridan Police Officer for four years until becoming employed at the Sheridan County Sheriff's Office as a Deputy Sheriff. Your affiant has been employed at the Sheridan County Sheriff's Office for five years and four months. Your Affiant has been assigned to the Wyoming Division of Criminal Investigation since March of 2009. Your affiant has been involved in the investigation of both state and federal controlled substance violations, including street level undercover purchases, execution of search warrants, major level conspiracy investigations and domestic marijuana growing operations. Your affiant has made numerous arrests for controlled substance violations, which have resulted in both misdemeanor and felony convictions in state and federal courts.

3. Your affiant has received training related to the investigation of controlled substance violations from the Wyoming Law Enforcement Academy, Wyoming Division of Criminal Investigation and the United States Drug Enforcement Administration. The training has covered subjects ranging from simple drug identification to major drug conspiracy investigations.

4. Based upon the above, your affiant knows the following:

    A. That often times controlled substance traffickers / distributors maintain on hand large amounts of U.S. Currency in order to finance their ongoing controlled substance business;

    B. That controlled substance traffickers / distributors often maintain items such as driver's licenses, phone bills, rent receipts, checks, canceled mail envelopes, utility bills, ledgers, and personal written or electronic diaries, which are commonly used to help identify the person or persons responsible for a crime, and used in court during prosecution of those person;

    C. That controlled substance traffickers / distributors often maintain books, records, receipts, notes, ledgers, money orders, money transfer receipts such as Western Union, MoneyGram, and Greendot, and other documents;

    D. That controlled substances traffickers/distributors commonly maintain address or telephone number books and documents which reflect names, addresses and/or telephone numbers of their associates in the trafficking/distribution organization. Furthermore, that it is common for those involved in the distribution of

   controlled substances to utilize cellular telephones in the course of their business and that they often program the telephone numbers and/or other identifying information of individuals who are also buying and/or selling controlled substances in those cellular telephones;

 E. That controlled substance traffickers/distributors who have access to a computer system, often use this computer to maintain records, receipts, notes, etc., of their illegal enterprise;

 F. That it is common for controlled substance traffickers/distributors to conceal proceeds from the distribution of controlled substances and/or records of locations of proceeds as well as contraband within their residences;

 G. That controlled substance traffickers/distributors take or cause to be taken photographs of themselves, their associates, their property and their product, and the photographs are usually maintained at the residences;

 H. That it is a common practice for controlled substance traffickers/distributors to maintain records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances;

 I. That based on the affiant's training and experience, the affiant knows that controlled substance traffickers/distributors have in their possession or control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons and that the weapons are used to protect and secure a controlled substance trafficker/distributor;

 J. That based on your affiant's training, experience, and information provided by other law Enforcement Officers who deal directly with organized gangs, that members of organized gangs such as the Bulldogs often form small sects amongst the gang and conduct business with each other, such as the trafficking / distribution of methamphetamine and other violent crimes involving firearms.

5. The information contained herein is a result of information known by the Affiant as well as information provided to the Affiant by other Officers, Investigators, and/or Special Agents who the Affiant knows to be reliable.

6. Law Enforcement Officers from agencies in Sheridan County have been receiving information regarding Miguel Angel Ordaz and/or Ordaz's associates being involved in the use and distribution of methamphetamine for the past nine months.

7. On February 18, 2010, your affiant received an anonymous tip that three Hispanic "gang" members were involved in selling / distributing large quantities of methamphetamine in the Sheridan area. On February 19, 2010, your affiant received more information from the anonymous source that the involved subjects were receiving large quantities of methamphetamine through the mail. The involved subjects went by the names of "Rob", "Noe", and "Isaias". One of these subjects was a homicide suspect in California. "Rob",

"Noe" and "Isaias" were members of the Bulldog Gang out of Fresno California. The anonymous source stated that a female subject who lived across from Safeway in Sheridan that drove a gray Durango and a blue Expedition received the packages at Shipton's Big R in Sheridan containing methamphetamine and stored weapons for the "gang" members.

8. Your affiant and other agents of the Wyoming Division of Criminal Investigation located a gray Dodge Durango and a blue Ford Expedition parked across from Safeway at 154 Coffeen Ave in Sheridan. The vehicles were registered to Kimberly Perkins. On several occasions your affiant observed Perkins drive the Gray Dodge Durango between 154 Coffeen Ave and Shipton's Big R in Sheridan. Agents observed the blue Ford Expedition on several occasions being driven by a Hispanic male. The Expedition was often parked in front of 456 East Burkitt, Sheridan, Wyoming.

9. On March 24, 2010, a traffic stop was conducted on the blue Ford Expedition. The Hispanic male driver was identified as Miguel Angel Ordaz. Following the identification of Ordaz, your affiant learned that Ordaz was a confirmed member of the Bulldog Gang out of Fresno California. Your affiant also learned that Ordaz was the suspect in a homicide by firearm in Fresno, California.

10. A subpoena to UPS confirmed multiple packages were being sent from Fresno California to Shipton's Big R in Sheridan. Several of these packages had been signed for by "Perkins". Packages were also sent to 463 Coffeen Ave and signed for by "Rivera" (Miguel Angel Ordaz has known aka's of Isaias Rivera and Tomas Hueso). A subsequent subpoena confirmed that packages had also been sent to "Rivera" at 456 East Burkitt in Sheridan Wyoming.

11. Subpoena's of Western Union and MoneyGram transactions confirmed that Ordaz and other members of this drug organization wired money to subjects, some of whom are known members of the Bulldog Gang, in Fresno, California corresponding with package arrival dates in Sheridan, Wyoming.

12. On September 9, 2010, Agents contacted a confidential informant, hereafter referred to as CI 2010-051, in reference to packages being received at Shipton's Big R in Sheridan Wyoming. CI 2010-051 confirmed that multiple packages containing methamphetamine were sent to Shipton's Big R in Sheridan from Fresno California. CI estimated that there were between twenty-four (24) and thirty-two (32) packages sent to CI 2010-051 at Shipton's Big R. CI 2010-051 observed Ordaz open a couple of these packages. CI 2010-051 observed Ordaz remove a large five (5) wick style candle from the package, break it open, and remove multiple baggies of methamphetamine from the candles. CI 2010-051 estimated each baggy to be one (1) to two (2) ounces of methamphetamine. CI 2010-051 had sent money via Western union or MoneyGram for Ordaz to California at last one (1) time. CI 2010-51 had stored some of Ordaz's guns at CI 2010-051's residence for Ordaz. CI 2010-051 described the guns as a handgun, a shotgun, and a long rifle. CI 2010-051 indicated that the guns were now in Ordaz's residence and placed in locations around the residence, such as Ordaz's bedroom and living room. Later CI 2010-051 told agents that Ordaz had gotten rid of his guns. CI 2010-051 then ended all contact with agents. CI 2010-051 is a known informant that has provided credible information regarding this case that has been corroborated through the statements of other confidential informants and subpoenas of UPS records.

13. On September 15, 2010 agents interviewed a confidential informant, hereafter referred to as CI 2010-057. CI 2010-057 received methamphetamine from Ordaz on one occasion. CI 2010-057 had seen Ordaz in possession of several firearms, including an MP5 assault rifle and several different handguns early in 2010. CI 2010-057 is a known informant that has provided credible information regarding this case that has been corroborated through statements made by other confidential informants, search warrants, and recorded jail calls.

14. On October 1, 2010 your affiant interviewed a confidential informant, hereafter referred to as CI 2010-063. CI 2010-063 stated that Ordaz kept a yellow note pad near his bed. The yellow note pad listed drug transactions and drug debts owed to Ordaz. CI 2010-063 last saw the yellow note pad at Ordaz's residence, 456 East Burkitt in Sheridan Wyoming around the beginning of September. CI 2010-063 stated that Ordaz has several firearms. CI 2010-063 described Ordaz as being a "gun collector". Ordaz got a laser sight for a large handgun that Ordaz had. CI 2010-063 observed several firearms including the handgun with the laser sight in Ordaz's house in August of 2010. CI observed a handgun (revolver) with a "pretty" handle on, a rifle, and a semi auto handgun with a matt silver finish. CI 2010-063 is a known informant that has provided credible information regarding this case which has been corroborated through statements made by other confidential informants and Law Enforcement records.

15. On October 14, 2010, your affiant participated in a proffer interview with Jason Lyles. Lyles advised agents that his supplier of methamphetamine had a substantial drug debt to Ordaz,. Lyles believed the debt to be around $6000. Lyles told agents that his supplier had possibly given Ordaz a handgun, but did not know when. Lyles described the handgun as a black 9mm with ivory grips.