Darrell L. Fun
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 10-CR-329-F |
| | ) | |
| ROBERT VELASQUEZ *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

## GOVERNMENT'S MOTION *IN LIMINE FOR* A PRETRIAL DETERMINATION OF THE ADMISSIBILITY AT TRIAL OF THE ANTICIPATED OPINION TESTIMONY BY CHEMICAL ANALYSTS BENJAMIN R. MILLER, PH.D. AND BRIAN STARBUCK AND REQUEST FOR DAUBERT HEARING

---

COMES NOW the United States, by and through its attorney, Darrell L. Fun, Assistant United States Attorney for the District of Wyoming, and files the following Motion in Limine regarding the admissibility of the anticipated opinion testimony of analytical chemists Benjamin R. Miller, Ph.D. and Brian Starbuck that the Defendant Miguel Ordaz intends to introduce during the trial in this matter, and respectfully requests a *Daubert* hearing prior to trial.

## I.     __INTRODUCTION__

The trial of this matter is set to commence the week of September 26, 2011.  On May 25, 2011, the Government was served notice pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure of Defendant Ordaz's intent to introduce the testimony of Dr. Benjamin R. Miller, Ph.D. and Mr. Brian Starbuck, M.S. as experts in chemical analysis under Rule 702 of the Federal Rules of Evidence (Fed. R. Evid.) to testify as to their opined conclusions based upon their analysis of DCI qualitative and quantitative experimental and analytical results.  Specifically, the Defendant seeks to have both Dr. Miller and Mr. Starbuck testify that, in their opinions, a review of the analytical results of the DCI crime laboratory analysis of the controlled substances does not comport with scientific and logical principals and that the positive results for methamphetamine is "due to methamphetamine addition" to the samples and, as such, the testing results are invalid.

The government files this motion in limine based upon *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), Fed. R. Evid. 104(a), 402, 403 and 702, to prevent witnesses from testifying regarding inferences or speculations they have drawn from their review of the laboratory testing reports and documents.  It is the government's position that the testimony of both Dr. Miller and Mr. Starbuck would not hold up to the liberal requirements of Fed. R. Evid. 702 and *Daubert*.  Their testimony would be neither reliable nor would it be helpful to the trier of fact.  Their opinions are not supported by sufficient facts nor are they applied to reliable principles in a manner likely to produce trustworthy results.

2

Even if the testimony were found to be reliable and helpful under Fed. R. Evid. 702, there is no need for the testimony of both experts.  As a result, the government objects to both Dr. Miller and Mr. Starbuck both testifying as being unnecessarily cumulative, confusion of the issues and misleading the jury pursuant to Rule 403.  The testimony of both experts would be duplicitive. The expert testimony on the issue of chemical analysis should, therefore, be limited to one expert. Finally, to the extent that such matters are relevant, the introduction of extrinsic evidence of essentially impeaching information is prohibited as it is a collateral matter.

## II.  DEFENSE EXPERT NOTICE

### A.      Dr. Benjamin R. Miller, Ph.D., Chemical Expert

Dr. Miller is expected to opine that the white powdery substance found in Defendant Miguel Ordaz's residence was chemically tested in violation of procedures and protocols established by the Wyoming Division of Criminal Investigation (DCI), State Crime Laboratory.  Dr. Miller opines that one positive methamphetamine result is the result of "methamphetamine addition" while the sample was in DCI's possession.  His testimony is offered by the Defendant for the purpose of proving that DCI's laboratory analysis is invalid,  concluding that the substance is methamphetamine is invalid.

### B.      Mr. Brian Starbuck, M.S., Chemical Expert

Mr. Starbuck is expected to opine that the white powdery substance found in Defendant Miguel Ordaz's residence was chemically tested in a fashion he finds scientifically invalid.  Mr. Starbuck is expected to opine that DCI's test results were due to methamphetamine being added to

the sample while the sample was under the control of DCI.  The Defendant is offering Mr. Starbuck's

opinions for the purpose of proving DCI's laboratory analysis is invalid, concluding that the substance

is methamphetamine is invalid.

### III.  ARGUMENT

Expert testimony is assessed by the judge as gatekeeper to determine whether the testimony

is reliable.  That gatekeeper function is exercised through the standards and factors set forth by Fed.

R. Evid. 702 and *Daubert*.  However, like all evidence, it must be relevant to be admissible.  Fed. R.

Evid. 402.  Without relevance, the reliability of an expert's testimony is of no consequence.

### A.      Relevance of Defendant's Expert Testimony as to Nature of the Substance

The first level of inquiry regarding the admissibility of an expert's testimony is to assess its

relevance.  The fact of consequence in this matter is whether or not the substance found in Defendant

Miguel Ordaz's residence is methamphetamine.  In order to be found relevant, the experts must be

able to testify that the fact of consequence is more or less probable.[1]  The issue is not whether the

testing method could have been better, it is whether or not the substance is methamphetamine.

Essentially, the nature of the substance is the issue, not the degree of perfection in the testing

procedures.  The opinion that the test results are subjectively 'invalid' has no bearing on whether or

not the substance is methamphetamine.[2]

---

[1]  Fed. R. Evid. 401 states, "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

[2]  The old adage that even a blind pig can find a truffle is instructive.  The issue before the jury is not how blind the pig is, it is whether or not the item found is a truffle.  The Defendant must offer some indication that the substance is not methamphetamine.  Only then, is it relevant to show how the government's results are flawed.

The burden is on the proponent of the evidence to show that the evidence meets admissibility requirements by a preponderance of the evidence.[3]   Here the Defendant fails to show how the Defendant's experts in chemistry can show that a fact of consequence is more or less probable.  They have not examined the substance even though the government has repetitively indicated that the Defendant may do so.[4]   The Defendant's experts purported  opinion that the testing procedures are flawed have an attenuated connection to the actual nature of the substance tested.   There is no evidentiary link proffered by the Defendant to give the jury a basis to determine the substance is not methamphetamine.  The lack of basis is a hole in the chain of the Defendant's inferences rendering the Defense experts opinions irrelevant.[5]   Instead, the Defendant seeks to introduce expert testimony which, at best, will evolve into a dispute as to whether the defense expert would have conducted the analysis and testing the same way the government did.

> B.      Expert Testimony Under Fed. R. Evid. 702

Under Fed. R. Evid. 702, expert scientific testimony is relevant when it "will assist the trier

---

[3]  Fed. R. Evid. 104(a).

[4]  Fed. R. Evid. 16(a)(1)(E) allows the defendant to "to inspect . . . tangible objects . . . if the item is within the government's possession, custody, or control and: (I) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. "  The authority to "inspect" includes the right to an independent weighing, and analyses. *See United States v. Butler,* 988 F.2d 537, 543 (5th Cir.)("[W]e agree that the court erred in refusing to grant appellant's motion to test a sample of the substance"), *cert. denied*, 510 U.S. 956 (1993); *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1238 (11th Cir. 1991)("A defendant in a drug prosecution has a right to have an expert of his choosing perform an independent analysis on the seized substance").  Thus, if the defendants doubts the accuracy of the Government's results, their true remedy is to retest the substance.

[5]  See *United States v. McVeigh*, 153 F.3d 1166, 1212-1213(10th Cir. 1998).  In the McVeigh case, expert testimony was excluded regarding mitigating factors.  The 10th Circuit found where there is no evidence of an association between McVeigh and another group of conspirators, expert testimony that McVeigh was less culpable as a result of his association with the other conspirators is irrelevant.  By analogy, the Defendant's experts' testimony that the testing protocols were not followed is irrelevant without evidence that the substance is not methamphetamine.

of fact to understand the evidence or to determine a fact in issue." It is the government's position that not only does the Defendant's expert testimony fail to assist the trier of fact, but the opinions themselves fail to meet the requirement that the opinion be: (1) based upon sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Defendant's experts are chemists who intend to offer opinions as to quality assurance, not the nature of the substance. Quality assurance opinions do not assist the trier of fact in this case. The inference from the opinion is that the substance tested is not methamphetamine. However, that opinion is not supported by sufficient data, reliable principles and trustworthy application of scientific principles. Further, it should be noted that neither of the Defendant's experts have experience in or are experts in the area of forensic chemistry.

If there were a genuine concern that the government's chemical analysis is flawed, the appropriate place to challenge the reliability of the testing process is when qualifying the government chemist. The Defendant's experts opine the test is "invalid." "Invalid" is not defined in the Defendant's notice of experts, but it can only be assumed that the Defendant wishes to challenge the reliability of the results. This challenge should first be made in a *Daubert* hearing evaluating the government's chemist, however, the Defendant has made no such motion for a *Daubert* hearing with regards to the government's experts. Further, the Defendant's experts must be evaluated independently for the reliability of their opinions.

(1) <u>The Opinions are Not Based on Sufficient Facts or Data</u>

The inference from the Defendant's experts' opinions is that the substance tested is not

methamphetamine, but the basis of that opinion is a critique of protocol and method, rather than independent data collection.  To render such an opinion, or any opinion that leads to such an inference ought to take into consideration the chemical composition of the substance itself.  Neither of the Defendant's chemists tested the substance.  Neither of the chemists are qualified or have the experience to conduct an  analysis of controlled substances.  This is a gapping hole in the facts and data that ought to be relied upon in rendering an opinion regarding the chemical composition of a particular substance.

### (2) The Opinions are Not the Product of Reliable Principles and Methods

The Defense has further failed to show how quality assurance principles are reliable in ascertaining the actual nature of a substance.  Evaluation of methodologies used to obtain "valid" scientific results is not a reliable method of showing probative value of whether or not a substance is a controlled substance.  The expert opinions are utilized to show the testing methods and protocols are scientifically "invalid" in their view and so through simple logic suggest the results are flawed. However, the conclusion that the substance is not methamphetamine is absurd based only on quality assurance analysis.

The experts opine the positive methamphetamine result is the product of DCI adding the controlled substance to the compound found in the Defendant's home.  The Defendant offers no reliable principle or method to support such a conclusion.  It is merely a hypothesis that is unexplained and untested.  The hypothesis is unsupported by any evidence and is wholly untestable.

What is testable, would be an independent evaluation of the substance utilizing reliable principles and methods.  The Defendant is free to have an independent evaluation of the substance

utilizing protocols and procedures the Defendant through consultation with his experts deems appropriate but has failed to do so.  Those results would be admissible, if of course, those testing methods were reliable.  Merely critiquing the execution of the government's test is wholly unreliable to show the substance is not methamphetamine.

(3) <u>The Principles and Methods Were Not Reliably Applied</u>

Simply put, neither of the Defendant's experts touched the evidence in this case.  They reviewed results, but have not challenged themselves to complete an independent analysis.  The Defendant's experts made no application of a principle or method in this case other than quality assurance.  The Defendant's notice does not provide any indication that there is some indicia that a quality assurance analysis of certain test data can show an alternate chemical result.

C.    <u><em>Daubert</em> Factors</u>

Fed. R. Evid. 702, Advisory Committee Notes sets forth the non-exclusive *Daubert* Factors:

(1) Whether the expert's technique or theory can be or has been tested - that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

(2) Whether the technique or theory has been subject to peer review and publication;

(3) The known or potential rate of error of the technique or theory when applied;

(4) The existence and maintenance of standards and controls; and

(5) Whether the technique or theory has been generally accepted in the scientific community.

Other factors to consider that are listed in the Advisory Committee Notes include:

(1) Whether the experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;

(2) Whether the expert has unjustifiably extrapolated from and accepted premise to an unfounded conclusion (too great an analytical gap between the data and the opinion proffered);

(3) Whether the expert has adequately accounted for obvious alternative explanations;

(4) Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

The opinion testimony of both Dr. Miller and Mr. Starbuck require a more detailed proffer than the one provided in the Defendant's expert notice. On the notice's face, it appears the opinions of the experts are subjective and conclusory. They both opine the test results are "invalid," but "invalid" is not defined, qualified or even explained. The theory that the substance is not methamphetamine can easily be tested, but the theory that the methamphetamine was added to the substance in the government's lab will be extremely difficult if not impossible to test in an objective sense. There has been no indication that the theory methamphetamine can be added to a sample through some unknown way has not been peer reviewed. A rate of error has not been presented. The theory has not been presented as one generally accepted in the scientific community.

If the Defendant's experts have utilized quality assurance principles in an attempt to prove the substance seized from the Defendant's home was not methamphetamine, the quality assurance

analysis has not been proven as a reliable method to determine the nature of a substance.   Their

process is one of extrapolating from the accepted premise that quality assurance methods lead to

reliable results and concluding through flawed logic that the results of all tests not adhering to

particular methods are wrong or "invalid".   This logic leaves a great divide between the data available

and the opinion proffered.

Their opinions serve no purpose other than to confuse the jury.   They are irrelevant and

unreliable opinions that in no way serve to assist a jury.

D.   Proposed Limitations on Defense Expert Testimony.

At trial, the Defendant's expert opinions are collateral matters and should be excluded.   That

is, while the Defendant is free to cross-examine the government's witnesses on testing methodology,

testing procedures and protocol, the Defendant should not be further allowed to introduce collateral

evidence concerning the same issue.   It is well settled that it is not improper for the trial judge to limit

impeachment evidence on matters that are deemed collateral or irrelevant. *United States v. Walker,*

930 F.2d 789 (10th Cir. 1991); *United States v. Warledo*, 557 F.2d 721, 726 (10th Cir.1977).   This

rule stems from the trial judge's power under Fed. R. Evid. 403 to exclude evidence which is more

prejudicial, misleading, or confusing than probative. A matter has been held to be collateral if it could

not have been introduced in evidence for any purpose independent of the impeachment. *State v.*

*Oswalt,* 381 P.2d 617 (Wash.1963).

The reliability of the government's chemical analysis is properly challenged in a *Daubert*

hearing, not through impeachment utilizing extrinsic evidence.  Essentially the Defendant's argument is that the tests performed by the government are unreliable in this case.  The appropriate forum for such an argument is a *Daubert* hearing challenging the admissibility of the government's expert testimony.[6]  Rather than utilizing the appropriate forum of a *Daubert* hearing or cross-examination of the government's experts, the Defendant seeks to offer the testimony of his experts during trial. At trial, the Defendant's expert testimony is not only inadmissible as unreliable under *Daubert* and Fed. R. Evid. 702, it is inadmissible as extrinsic evidence of a collateral matter.  The quality assurance critique of government protocols and methods is a collateral issue as to whether or not the substance is methamphetamine.

In short, whether the testing met the subjective standards of the Defendant's experts is entirely collateral to whether or not the substance is in fact methamphetamine.  Extrinsic evidence offered as impeachment on a collateral matter is entirely within the Court's discretion to exclude.  Testimony regarding the testing protocols is simply not probative.  And even if it were, it would mislead the jury, confuse them and waste time.  Scientific rigor and subjective evaluation of what procedures are preferable is wholly collateral to whether or not the substance is a controlled substance.  The Court may limit its cross-examination of any witness to matters material to the trial.

---

[6] *United States v. Diaz*, 2006 WL 3512032 (N.D.Cal.), is instructive with regards to the procedure of challenging the results of government narcotics analysis.  The Northern District of California found the government's expert testimony passed muster under *Daubert* despite the quality assurance critique from the Defendant's expert. Specifically the Court held thousands of defendants in San Francisco "had an incentive to countertest the [lab's] procedures.  Yet there has not been a single documented occurrence of a false-positive confirmation of marijuana or cocaine.  The abstract criticisms of [the Defendant's expert] lodges against the [lab's] protocol have limited value in light of the practical efficacy of the procedures used by the [lab]."

The Confrontation Clause does not bar exclusion.  The Confrontation Clause has reasonable limits and permits the exclusion of testimony that would confuse the issues, is repetitive or is only marginally relevant.[7]   Confrontation is adequately afforded through cross-examination of the government's chemist.  *Daubert* does not require a district court to look at whether a proposed expert could have performed his or her analysis in a better manner. See, e.g., *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 809 (3d Cir. 1997) (emphasis added). Such matters go to weight, not admissibility. Indeed, the Supreme Court specifically noted in *Daubert* that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

The testimony of the Defendant's experts concerning quality assurance does nothing but muddy the waters of forensic science for the trier of fact.  It would confuse the issue for the jury by suggesting the burden of proof is one of perfection in process, which is legally inaccurate.  The legal standard is that the process be reliable.  Further, it would be unnecessarily repetitive to cross-examine the government's analyst regarding quality assurance measures, followed by the presentation of extrinsic evidence from two of the Defendant's experts.  This degree of repetition is extraneous and a waste of time, particularly given that evidence of quality assurance is only marginally relevant to the elements of the offense.  As discussed above, quality assurance and untested hypothesis with regards to the nature of the substance are only marginally relevant to whether or not the substance is in fact a controlled substance.

---

[7]  See *United States v. Walker*, 930 F.2d 789, 792 (1991) quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Therefore, appropriate limits should be established for the use of the Defendant's experts. Obviously, they can be utilized as consultants to prepare for the cross-examination of the government's analysts and their test results.  Also, they can be permitted to testify at a *Daubert* hearing challenging the reliability of the government's experts.  However, when turning to the question as to whether the Defendant can offer his experts at trial as substantive evidence, as a prerequisite, the defense experts should be subjected to the reliability requirements of a separate *Daubert* hearing.  Furthermore, both of the Defendant's experts should be evaluated for duplication in their testimony and limited to opinions unique from one another in order to avoid cumulative presentations and undue waste of time.  Bounds should be established for proper impeachment of the government's experts and the presentation of extrinsic evidence on collateral matters presented by the Defendant.

WHEREFORE, the United States respectfully urges that the government's motion to exclude or in the alternative, limit the testimony of Dr. Benjamin R. Miller and Mr. Brian Starbuck under Rule 702 be granted.

DATED this 19th day of September, 2011.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney


By  _____
DARRELL L. FUN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 19th day of September, 2011 a true and correct copy of the foregoing document was served upon Counsel of Record via CM/ECF or Court's Electronic Filing System.

_____
UNITED STATES ATTORNEY'S OFFICE