1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF WYOMING

3     -------------------------------------------------------------

4     UNITED STATES OF AMERICA,

5          Plaintiff,                     Case No. 10-CR-329-F

6          vs.                            Cheyenne, Wyoming
                                          March 5, 2012
7     MIGUEL ANGEL ORDAZ,                 8:30 a.m.

8          Defendant.

9     -------------------------------------------------------------

10

11              TRANSCRIPT OF SENTENCING PROCEEDINGS

12
          BEFORE THE HONORABLE NANCY D. FREUDENTHAL
13             CHIEF UNITED STATES DISTRICT JUDGE

14

15

16

17
      Court Reporter:          MRS. JANET DAVIS, RMR, FCRR
18                             United States Court Reporter
                               2120 Capitol Avenue, Room 2228
19                             Cheyenne, Wyoming  82001

20

21

22

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced with computer.

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:      MR. DARRELL L. FUN
                             Assistant U.S. Attorney
 4                           UNITED STATES ATTORNEY'S OFFICE
                             District of Wyoming
 5                           100 East B Street, Suite 2211
                             P.O. Box 22211
 6                           Casper, Wyoming  82601

 7

 8   For the                 MR. PETER J. TIMERS
     Defendant Ordaz:        Attorney at Law
 9                           SCHWARTZ, BON, WALKER, STUDER, LLC
                             141 South Center Street, Suite 500
10                           Casper, Wyoming  82601-2588

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2        (Sentencing proceedings commenced

3        8:30 a.m., March 5, 2012.)

4            THE CLERK:  In criminal matter 10-CR-329-F, United

5    States of America versus Miguel Angel Ordaz, set today for

6    sentencing.

7        Counsel, please state your appearances.

8            MR. FUN:  Your Honor, Darrell Fun for the United

9    States.

10            MR. TIMBERS:  Peter Timbers on behalf of Miguel Angel

11    Ordaz.

12            THE COURT:  Good morning, gentlemen.  I know that

13    Mr. Timbers has a pending motion which affects the guideline

14    calculation.  I think I would like to go ahead and take that

15    first, and then we will loop back and address the factual

16    issues and other legal issues associated with the Presentence

17    Report as it was revised.

18        First, I would like to get on the record, do you have

19    the revised Presentence Report?

20            MR. TIMBERS:  Yes, Your Honor, I do.

21            THE COURT:  Does the Government have that report?

22            MR. FUN:  Yes, Your Honor.

23            THE COURT:  All right.  Mr. Timbers.

24            MR. TIMBERS:  Thank you, Your Honor.  I'm here today

25    to in part attack the remaining 924 charges.  And I would like

 1    to incorporate the arguments that were advanced in

 2    Mr. Velasquez' motion to dismiss the 924 counts in that as

 3    well.

 4           Similarly, as Your Honor knows, I move for dismissal

 5    of Count 13 as opposed to Count 10, but I just got the law

 6    which says that apparently Count 10 should be dismissed and

 7    Count 13 remains.

 8           With regard to that, my recollection of the trial is

 9    as follows -- and similar to what Ms. Roden did, if I look at

10    the verdict form with regard to Count 12, the specificity

11    required to advance -- both pursuant to the verdict form and

12    pursuant to the Superseding Indictment, the specificity

13    required to determine which firearm is necessary to sustain

14    that verdict isn't there.  I believe the Court should dismiss

15    it similar to the arguments advanced Friday.

16           Additionally, Count 13, I don't think that there's any

17    testimonial evidence -- well, I guess going back to Count 12,

18    Count 12 is possession of -- and there's a long list of

19    firearms relating back to Count 11, which is the possession in

20    furtherance of -- which is a possession of -- with intent to

21    distribute the two bags of methamphetamine found in the black

22    bag.  Your Honor, Count 12 as it stands does not

23    specifically -- it doesn't have the necessary specificity

24    pursuant to this Court's order on Friday with regard to the

25    Velasquez counts.

1         Count 13 relates back to the overall conspiracy and

2    that was the gun that was found with the two bags that

3    allegedly had methamphetamine, but it isn't tied -- the machine

4    gun is not tied to that bag, and so when Your Honor -- when I

5    look back to what would be required to sustain a guilty verdict

6    with regard to the machine gun, I don't know -- certainly I

7    can't think of any testimony which relates to possession of

8    that machine gun in furtherance of the drug distribution

9    conspiracy, but that machine gun wasn't -- so the machine gun

10   wasn't tied to the two bags of alleged methamphetamine that

11   were found in the black bag.  It goes back to the conspiracy in

12   general, and I'm thinking there is no testimony that ties that

13   to the overall conspiracy.

14        So I think that should be dismissed as well.

15        THE COURT:  Count 13 on a sufficiency of the evidence,

16   is that what you're --

17        MR. TIMBERS:  Yes, on sufficiency of the evidence

18   because it wasn't tied to Count 11, the two bags.  So Count 13

19   is just possession in furtherance of the conspiracy, whereas

20   the testimonial evidence, it didn't come from Danni Fox.  It

21   didn't come from Candice Kysar.  It didn't come from Jason

22   Lyles.  It didn't come from Kimberly Perkins.  Your Honor, it

23   just doesn't exist.

24        So for those reasons I believe both of those counts

25   should be dismissed, Count 12 and Count 13.

1          THE COURT:  Just so I understand your argument

2     about -- as to Count 12, which relates back to Count 11 --

3          MR. TIMBERS:  Yes.

4          THE COURT:  -- is what again?

5          MR. TIMBERS:  Okay.  Those firearms -- well, on Friday

6     you dismissed multiple firearms because the verdict -- the

7     verdict form didn't have the necessary specificity, which

8     firearm was it?  Okay.  The two bags of methamphetamine found

9     that sustained Count 11, the possession with intent to

10    distribute, what firearm of that list -- my argument is there

11    is no -- there is no testimony, there is no evidence that

12    sustains any one of those firearms with the necessary

13    specificity to sustain the guilty verdict for 12.  Nothing.  It

14    was the Rossi Trifecta.  It was the gun with the shiny handle.

15    It was all of those -- I mean, it was all of those guns.

16         But the verdict form on its face was deficient.  Just

17    like the Superseding Indictment didn't allege any one in

18    particular, it wasn't followed up by a verdict form that

19    corroborated to anything.  And so for that reason I believe

20    that 12 is insufficient.

21         Count 13 was the machine gun that was found in the

22    bags that allegedly had methamphetamine, but the machine gun

23    was not tied to those -- to that particular Count 11.  Instead,

24    it was related back to the conspiracy in general.  When I

25    searched the evidence, when I looked at the transcripts,

1    there's nothing to support that conviction either.

2         Your Honor, I will stipulate, look, we had a machine

3    gun.  That's why Count 14 exists.  It wasn't registered.  I was

4    willing to stipulate to that in the trial.  But as far as

5    possession in furtherance -- and it is a heightened -- it is

6    not just possession.  It is possession in furtherance of a drug

7    distribution conspiracy.  Well, that machine gun, that

8    disassembled machine gun, where was that used in the

9    conspiracy?  The Government could have argued that it was tied

10   to the alleged drugs in the black bag, but the Government

11   didn't.

12        It should not be allowed to stand pursuant to 924,

13   pursuant to Count 14, which is the conviction for possession of

14   a machine gun that's not registered, certainly.

15        Your Honor, I have alluded to it, when I think back to

16   all of the testimony about all of the guns that Miguel Ordaz

17   had, I recall, I think it was, Candice Kysar who said the gun

18   had a really pretty handle.  Well, that was one of the

19   firearms.  She never testified that she ever received

20   methamphetamine from Miguel Ordaz.  Kimberly Perkins was asked

21   the direct question by the Government:  There was never any

22   firearm present during any drug transaction with Miguel Ordaz.

23        It is a vacuum of evidence.  I don't think that those

24   924s can be sustained.

25        THE COURT:  Thank you.

1          MR. TIMBERS:  That's my argument.  Do you have any

2    questions?

3          THE COURT:  No.  I think you've answered my questions.

4    Thank you.

5          MR. TIMBERS:  Thank you, Your Honor.

6          MR. FUN:  May it please the Court.

7          THE COURT:  Counsel.

8          MR. FUN:  Your Honor, I think the -- I guess initially

9    let's just start off with the issue of whether or not there's

10   actually a merger of counts.  I think United States versus

11   Moore, which is at 958 Federal 2d 310, Tenth Circuit case of

12   1992, addresses those issues and basically concludes that even

13   if there is a merger of two counts where you have multiple guns

14   attached to a single drug trafficking crime, you always take

15   the higher of the offenses.

16          In this case I don't think that's the case, and I

17   think I should probably go ahead and address Count 12.  And I

18   think in this particular case I understand Mr. Timbers'

19   argument concerning the -- either the jury instructions or the

20   verdict form, but I think he's off mark.

21          And United States versus Davis at 55 517, a 1995 case,

22   is on point.  And what that case essentially discusses is that

23   as long as each of the -- each count in the Indictment clearly

24   pairs one of the firearms to one of the drug charges, that it

25   is sufficient.  It goes on to say that we find it significant;

1    therefore, that the Indictment was included in the jury

2    instructions and that several copies of the jury instructions

3    were given to the jury before deliberations began.

4           So they essentially held in this particular case

5    because of the guns -- there were multiple guns, multiple drug

6    counts, they were paired individually to separate drug counts,

7    that was sufficient.

8           When we look at this case, Your Honor, look at Count

9    12, it clearly pairs several firearms to a very specific drug

10   count, that being drug Count 11 which is possession with intent

11   to distribute methamphetamine.  In comparison, when we look at

12   Count 13 which alleges just the machine gun, not a bunch of

13   guns, specifically a machine gun, it ties that to Count 1, the

14   conspiracy.  So each gun with -- the guns with regard to Count

15   12 are tied to a different drug charge and so Davis and Moore

16   are applicable in this particular case.

17          With regard to Count 13, Mr. Timbers argues

18   essentially for a judgment of acquittal notwithstanding the

19   verdict.  We have already been down that road, and I don't

20   think he can open it up -- that issue again at this point.

21   We're at sentencing.  And with regard to that, I think the case

22   of United States versus Avery is applicable, found at 295

23   Federal 3d 1158.  And Avery stands for several propositions,

24   and most importantly they recite again the proposition that

25   when conducting judgment of acquittal notwithstanding the

1   verdict, you must take the evidence, both direct and

2   circumstantial, together with reasonable inferences to be drawn

3   therefrom in the light most favorable to the Government, a

4   reasonable jury could find the defendant guilty beyond a

5   reasonable doubt.

6        Taking that standard into account and in this

7   particular case, again, there's more than sufficient evidence

8   that the guns, and particularly the machine gun, was in

9   connection with the conspiracy.  How do we know that?  Because

10  it was found in the bag with the drugs, scales.  And that is an

11  overt act to the conspiracy.  Possession with intent to

12  distribute methamphetamine is overt act of conspiracy.  Can't

13  get any clearer than that.  And when you have drugs and scales

14  with a gun in a bag, obviously that is part and parcel of the

15  conspiracy.  So that is a pretty clear proposition.

16       The other thing that I should probably mention is

17  Avery discusses that there is clearly a difference when raising

18  the issues either prior to the verdict or post-verdict and that

19  is found -- let's see if I can find the page number -- page

20  1174 in 295 Federal 3d.  And with the -- what Avery says is

21  when a defendant challenges the element of the offense after a

22  jury verdict, the Indictment will be deemed sufficient if it

23  contains words of similar import to the element in question:

24  "We will find the Indictment sufficient unless it is so

25  defective that by any reasonable construction it fails to

1    charge the offense for which the defendant is convicted."

2         Because of this liberal construction rule, the

3    Indictment challenged for the first time post-verdict may be

4    found sufficient even though that Indictment would have been

5    found wanting had it been challenged preverdict.  So Avery

6    clearly distinguishes post-verdict and preverdict challenges of

7    the Indictment.  What I'm hearing Mr. Timbers say, though he's

8    really not challenging the Indictment, but I think that would

9    be the proper challenge for him were he to raise it if the

10   Indictment were unspecific -- but I think it brings us again

11   back to Moore and Davis, and I think those questions have been

12   answered by the Tenth Circuit.  So I believe that counts 12 and

13   13 both stand.

14        Does the Court have any questions for me concerning

15   these issues?

16        THE COURT:  Well, I have a question concerning the

17   Moore case which resulted in -- there was just one drug

18   trafficking offense alleged in the Indictment and found by the

19   jury, as the Court understands that case, and there were

20   different firearm offenses, and the Court ended up concluding

21   that, as I read it, because there was just one drug trafficking

22   offense with two separate 924 offenses tied to it that those

23   two offenses, 924 offenses, should run concurrent.

24        Is that your reading of Moore?

25        MR. FUN:  No, Your Honor, the right -- it seems Moore

1    seemed to say that you could not run -- that would be

2    inappropriate, you could not run a concurrent sentence on 924

3    because the statute is very clear and requires by statute a

4    consecutive sentence.

5           So what they said was that in this particular case you

6    only sentence for one 924(c).  You sentence for the most severe

7    one.

8           THE COURT:  The most severe one.

9           MR. FUN:  And you make it consecutive to the drug

10   charge.  But to do it concurrent and to find that you were

11   sentencing on both 924(c)s would be inappropriate.

12          THE COURT:  As I heard Mr. Timbers' argument in part,

13   his argument was that Count 13, even though by the Indictment

14   and by the special verdict form it was tied to Count 1, that

15   the actual tie was to Count 11, and you point out that Count 11

16   is an overt act of the conspiracy.

17          Do we, then, run into a problem about these two 924s

18   really being tied by the evidence to Count 11 irrespective of

19   how they're charged and how the jury found?

20          MR. FUN:  I don't think we do, Your Honor.  And the

21   reason I don't think that is because -- well, let me just say

22   this.  When you look at Avery, they talk about using the

23   Blockburger test and they talk about the fact if you have a

24   conspiracy and you have substantive counts of distribution or

25   possession with intent to distribute, those under the

1    Blockburger standard contain different elements and clearly

2    separate offenses.  You can, in turn, tie firearms to the

3    conspiracy and/or possession with intent to distribute because

4    there could be occasions, and in this occasion, for example, in

5    this particular case where there might be a gun involved in the

6    conspiracy but may not have been tied to a substantive count

7    that was charged in the Indictment.

8           And I think that's what we have in this case.

9    Although arguably the machine gun could have been tied to the

10   substantive count of possession with intent to distribute, I

11   think it is more closely tied to the conspiracy count.  And the

12   reason for that is when you look at -- again, we go back to the

13   elements and the factors that the jury has to weigh and you

14   have to look at the nature of the gun, where it was in

15   relationship to the proximity of the drugs, the -- whether or

16   not the defendant lawfully possessed the firearm, and they go

17   through all of these factors, so really the question is could a

18   reasonable jury, given all the facts and circumstances -- could

19   they reasonably infer that the machine gun was possessed in

20   furtherance of the drug trafficking conspiracy, that being

21   Count 1.

22          And clearly it can.  I mean, when you draw those

23   reasonable inferences, yes.  So that's the standard that we

24   have to look at, is what are the reasonable inferences that a

25   jury can infer, both circumstantial and direct, in the light

1    most favorable to the prevailing party, which in this case

2    would be the Government.  So when you go back to that general

3    rubric of how you gauge judgment for acquittals, you have to go

4    back to that standard, with due deference being obviously given

5    to the jury's verdict and their inferences of the facts and the

6    evidence.

7              THE COURT:  Thank you.

8              Mr. Timbers, do you have a reply?

9              MR. TIMBERS:  Yes, Your Honor.  The conspiracy

10   required additional people.  That's what makes possession with

11   intent to distribute -- when you involve other additional

12   people, then it becomes a conspiracy and there's an

13   interdependency between those people.  To argue now that -- I

14   mean, it seems a little bit duplicitous what the Government is

15   suggesting because what they're saying is in effect we

16   should -- we should be -- yes, all our evidence tied the

17   machine gun to Count 11, but now we should be given the free

18   rein to say, well, really it is part -- it was an overt act of

19   the conspiracy.

20             No, it wasn't.  It was charged separately.  Count 11

21   stood by itself.  Okay.  And that's where I believe that

22   Mr. Fun's argument is problematic.

23             THE COURT:  Thank you.

24             MR. TIMBERS:  Thank you, Your Honor.

25             MR. FUN:  Your Honor, Mr. Timbers -- the cases that I

1    cited also discuss the fact that 924(c)s are separate charges

2    outside the conspiracy.  They're stand-alone charges.  You

3    don't have to charge nor allege an underlying drug offense to

4    charge or obtain a conviction under 924(c).

5         What he's trying to do now is mix the 924 and saying

6    we have to prove that Mr. Ordaz conspired to possess a firearm

7    in connection with drug activity.  That's not the case at all.

8    He only has to possess the firearm in connection with some

9    underlying drug activity which in this case is the charged

10   conspiracy.

11        THE COURT:  Thank you.

12        MR. TIMBERS:  I disagree, Your Honor.  I disagree for

13   the obvious reason that there's not substantial evidence to

14   support this count, Count 13, with regard to the overall

15   conspiracy, and that's possession in furtherance of the drug

16   distribution crime.  That's what it is.  Thank you, Your Honor.

17        THE COURT:  Thank you.

18        Well, in addressing defendant's motion as to Count 12

19   and Count 13, as the Court understands it, the defendant argues

20   that Count 12 lacks specificity on the verdict form and relates

21   that to the arguments made during the Velasquez hearing which

22   arguments related to the 924 count connected to the conspiracy

23   count.

24        Count 13, the Court understands Count 13 is being

25   attacked as on a sufficiency of the evidence count.

1          I would like to address Count 13 first.  The Court

2     agrees with the Government that both of these counts pair

3     correctly with separate specified drug activities.  Count 12

4     pairs with Count 11 and Count 13 pairs with Count 1.  In

5     looking at Count 13 and applying the proper standard for a

6     motion for judgment of acquittal, or basically a renewed motion

7     for judgment of acquittal, the Court agrees with the Government

8     that a reasonable juror could conclude that having that machine

9     gun in close proximity to drugs -- it was found in the same

10    duffel bag with the drugs.  In looking at the type of gun

11    involved, that Count 13 is supported by sufficient evidence,

12    again, when applying the standard for a judgment of acquittal,

13    which standard requires the Court to draw reasonable inferences

14    from the evidence, both direct and circumstantial, and

15    affording that evidence and viewing that evidence in the light

16    most favorable to the Government.

17         So Count 13 is supported on the evidence, and the

18    Court cannot conclude that no reasonable jury could find that

19    that machine gun was possessed in furtherance of the

20    conspiracy.

21         Contrasting that with the Velasquez hearing, we had

22    quite a bit of evidence that the gun was incidental and its

23    possession was coincidental with a drug distribution act that

24    had already concluded.  That was of the most significant

25    concern to the Court, was the -- all of the evidence showed

1    that that gun wasn't, from the Court's perspective -- even

2    looking at the evidence in the light most favorable to the

3    Government and drawing reasonable inferences in favor of the

4    Government, the Court concluded that no reasonable juror could

5    perceive that that possession of the SKS rifle was in

6    furtherance of the particular drug distribution activity that

7    it was tied to.

8              Here we have a machine gun tied to a conspiracy, and

9    the possession with intent to distribute drugs is an overt act

10   of the conspiracy.  And so the Court will deny the defendant's

11   motion as to Count 13.

12             As to Count 12, the argument is that that count lacks

13   specificity.  And again, the Court's attention was drawn to the

14   argument in Velasquez which had to do with the Indictment and

15   the special verdict form that just referenced firearms and tied

16   that count, that 924(c) count, to the conspiracy.

17             The Court's concern there was that the jury, having,

18   for whatever reason, concluded that the SKS rifle was in

19   furtherance of the drug distribution count, could then -- and

20   that that drug distribution activity occurred during the scope

21   and time frame of the conspiracy, could then become confused

22   and basically convict the defendant of the same conduct in

23   violation of the rule against multiple counts relating to a

24   single underlying drug trafficking offense.  And that's why the

25   Court vacated that count.

 1        Here we have -- we don't have that potential for

 2   confusion because we have, albeit a long list of firearms in

 3   Count 12 tied to Count 11, none of those firearms are the

 4   machine gun.  As the Court understands the charge in Count 13

 5   and its reference in Count 14, and so the Court is not -- does

 6   not have the same concern from the Velasquez hearing of

 7   multiplicity of counts as to the same offense.

 8        The Court believes and concludes that the evidence in

 9   the trial was sufficient, again applying the deferential

10   standard of review in favor of the Government, to allow Count

11   12 to stand.  And the Court finds no merit in the argument that

12   Count 12 lacks specificity.  It is specific and by its

13   specificity precludes the jury from being confused and reading

14   in the machine gun from Counts 13 and 14 into Count 12 because

15   the machine gun is not listed in Count 12.

16        And so the Court will deny the defendant's motion to

17   vacate Count 12.

18        Are we ready to move to sentencing?

19        MR. FUN:  Yes, Your Honor.

20        THE COURT:  Mr. Timbers.

21        MR. TIMBERS:  Your Honor, I understand your ruling.

22   If you could address the -- when I look at the verdict form as

23   to Count 12, it states possession of a firearm in furtherance.

24   It is not a specific firearm and I guess my problem is with

25   regard to your ruling, my problem is if one -- if one gun was

 1   seen as meeting one particular element and another gun was seen

 2   as relating to another particular element, that's not allowed.

 3   It has to be specific with regard to the -- with regard to the

 4   verdict form.  And with all due respect, Your Honor, if you

 5   could address that.

 6          THE COURT:  Sure.  Thank you.

 7          MR. FUN:  Your Honor, if I could interrupt.

 8          THE COURT:  Yes.

 9          MR. FUN:  The issue really in these cases is the

10   conjunctive/disjunctive issue, and, if I remember correctly,

11   the Court did instruct the jury that when something is alleged

12   in the conjunctive, they consider it in the disjunctive aspect.

13   So any one of those firearms could have been found sufficient

14   for the 924 or all of them could have been found or some of

15   them.  It really doesn't matter because of the

16   disjunctive/conjunctive aspect that the jury is given.  That

17   is, they consider firearm A or firearm B or firearm C or

18   firearm D.

19          So really, in that aspect, there is no requirement

20   that there be a special verdict with regards to a specific

21   firearm.  They can find one firearm as alleged in the

22   Indictment.  That's sufficient.

23          THE COURT:  I'm sorry.  I've managed to block myself

24   out of ECF by entering too many incorrect passwords.  Does

25   anyone have the jury instructions or the special verdict form?

 1          MR. TIMBERS:  May I approach?

 2          THE COURT:  Yes.  Thank you.  Both the Indictment --

 3   it would be helpful to have the Indictment, the jury

 4   instructions and the special verdict form.

 5          MR. TIMBERS:  I have that, Your Honor, as well.

 6          MR. FUN:  I apologize.  I don't have a copy of the

 7   Indictment with me.

 8          THE COURT:  Well, Instruction No. 69 does specify the

 9   firearms, and the Court believes that the combination of

10   Instruction 69 with the special verdict form -- and the

11   Indictment lists the firearms as well.  I'm -- I'm just

12   unconvinced that with the Indictment having been given to the

13   jury, the instructions read and provided to the jury, that

14   there -- that the potential for confusion and conviction on

15   Count 12 based on the machine gun just is not supported.

16          Thank you very much for your argument and for pointing

17   that out to the Court.

18          MR. TIMBERS:  Thank you, Your Honor.

19          THE COURT:  I apologize for the delay there and thank

20   you for the documents.

21          Anything further?  Mr. Timbers?

22          MR. TIMBERS:  No, Your Honor, not with regard to my --

23          THE COURT:  Well, I think you have made your record.

24   And I appreciate it.  I appreciate the time and attention and

25   direction to the Court so that I don't get confused about what

Case 1:10-cr-00329-NDF   Document 593   Filed 04/30/12   Page 21 of 40

1   your argument was.

2          MR. TIMBERS:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          Turning now to sentencing, Mr. Timbers, have you and

5   Mr. Ordaz had the opportunity to read and discuss the

6   Presentence Report as it was originally filed?

7          MR. TIMBERS:  Yes, Your Honor, we have.

8          THE COURT:  And what about the revised Presentence

9   Report which, as the Court understands it, deletes Count 10?

10  Have you had an opportunity to at least review that?

11         MR. TIMBERS:  I have reviewed Ms. Danni's deletion of

12  that, and if you could give me a second just to go over it with

13  my client, please.

14         THE COURT:  Yes, thank you.

15         MR. TIMBERS:  Thank you, Your Honor.  We're fine.

16         THE COURT:  All right.  Thank you.  How about the

17  Government?  Have you had an opportunity to -- adequate

18  opportunity to review the revised Presentence Report?

19         MR. FUN:  I have, Your Honor.  Thank you.

20         THE COURT:  Are there any factual issues concerning

21  the revised Presentence Report?

22         MR. FUN:  I don't, Your Honor.  I did file an

23  objection, and it related to the 40 ounces of methamphetamine

24  as relevant conduct.  And I filed that.  It is dated January

25  22nd, 2012, but I will stand on that as my objection.

1              THE COURT:  All right.  And I see that that relates to

2       paragraph number 20 in the original Presentence Report.

3              MR. FUN:  Correct.

4              THE COURT:  It is probably the same paragraph in the

5       revised.

6              MR. FUN:  Yes, Your Honor.

7              THE COURT:  All right.  Thank you.

8              Mr. Timbers, does the defendant have any factual

9       issues concerning the Presentence Report?

10             MR. TIMBERS:  No, Your Honor.

11             THE COURT:  The Court will then accept the revised

12      Presentence Report as its findings of fact.

13             The Court in addressing the Government's objection

14      believes that relevant conduct, while conservatively

15      calculated, is the most provable amount and will overrule the

16      Government's objections to increase relevant conduct -- or

17      excuse me -- to increase the quantity of methamphetamine which

18      then would expand relevant conduct.

19             Are there -- with those -- with that factual finding,

20      are there legal issues relevant to the guideline calculation

21      for the Government?

22             MR. FUN:  I don't believe so, Your Honor.  Thank you.

23             THE COURT:  All right.  Thank you.  And your objection

24      on relevant conduct is so noted.

25             Anything from the defendant?  And this concerns both

1    the offense level computation as well as the criminal history

2    calculation, if you have any legal issues relevant to those

3    matters.

4          MR. TIMBERS:  Just a second, Your Honor.  I'm sorry.

5          THE COURT:  Yes.

6          MR. TIMBERS:  No, Your Honor.  That is correct.

7          THE COURT:  All right.  The Court then will put the

8    guideline calculations on the record.  These are taken from the

9    revised Presentence Report.

10         We are here for sentencing, which the base offense

11   level relates to the drug trafficking offenses charged and base

12   level for a violation of the drug trafficking laws for the

13   quantities found in the Presentence Report which, as the Court

14   recollects, comports with the quantities found by the jury

15   begins at a base offense level of 32.

16         Because this defendant was also convicted of money

17   laundering, he does receive a two-level increase from that base

18   offense level, arriving at an adjusted offense level of 34 and

19   a total offense level of 34.

20         This defendant does have a number of one-point

21   convictions, traffic-related convictions.  Only four of those

22   seven criminal history points count.  However, the defendant

23   was on probation for driving under the influence conviction in

24   2007.  And, therefore, two additional points are added,

25   resulting in a total of six criminal history points which

1    establishes him at a Criminal History Category III.

2              Those do come from the Presentence Report, but I will

3    turn again to Counsel for any objections.

4              MR. TIMBERS:  Your Honor, just a minute.  May I speak

5    with Ms. Danni?

6              THE COURT:  Yes.

7        (Probation Officer and Counsel consult.)

8              MR. TIMBERS:  Your Honor, it was a driving under

9    suspension, not a driving under the influence.

10             THE COURT:  Oh, I may have misspoke on that.

11             MR. TIMBERS:  Your Honor, I believe it is correct in

12   the report.

13             THE COURT:  Yes, it is driving under suspension is the

14   2007 incident.

15             MR. TIMBERS:  And Ms. Danni was kind enough to show me

16   the conviction for that.

17             THE COURT:  All right.  Thank you.  And yes, the 2007

18   conviction was driving under suspension and not driving under

19   the influence, and so paragraph 47 in referencing driving under

20   the influence is incorrect, but it does relate back to the

21   correct docket number.  It was just an incorrect

22   characterization of the offense.

23             Any objections to the guideline calculation as

24   announced by the Court from the Government?

25             MR. FUN:  No objection, Your Honor.  Thank you.

1          THE COURT:  All right.  Then those will be the Court's

2  conclusions.

3          Mr. Timbers, I will turn to you for any argument or

4  statement on your client's behalf before I turn to the

5  Government, and then I will ask Mr. Ordaz if he has anything to

6  state.

7          Mr. Timbers.

8          MR. TIMBERS:  Your Honor.  I look back at my

9  sentencing memo that I wrote, I think it was late January and

10  early February, and I was a little bit strident in that.  And,

11  Your Honor, I probably said some things not necessarily the way

12  I should have, but my sentiment is the same, my thoughts

13  regarding the sentencing.

14          I believe that the sentencing for the weapons in this

15  case is -- is out of hand.  There was no mention by any

16  witness, again, that those guns were used to intimidate, that

17  those guns were used in any way to effect any transfer of

18  methamphetamine.

19          He gets 55 years pursuant to 18 United States Code

20  Section 924.  Your Honor, I just -- I fundamentally don't

21  believe that that's appropriate, logical or consistent with

22  3553.  And, in fact, 924 in this case turns 3553 into a useless

23  statute.  I believe that those are correctly mitigating factors

24  and at least ought to draw Defendant Ordaz to a ten year with

25  regard to the conspiracy and possession charges.  But more

1       importantly, Your Honor, I do feel it is -- and I included some

2       reference to dissenting opinions in my sentencing memorandum.

3       This isn't justice.  This is the law, but it isn't justice.

4              And I believe 3553 compels you, an Article III judge,

5       to look at what I think is an unjust imposition of a sentence.

6              I understand that machine guns are dangerous.  I

7       understand that firearms are dangerous.  But again, nobody that

8       took the stand was ever endangered by Mr. Ordaz.  It just

9       wasn't there.  Nobody felt threatened.  Nobody felt

10      intimidated.  And he had firearms.  But again, possession isn't

11      enough.

12             And so I guess in a way I'm still attacking 924, but

13      also I'm saying that 924, the way it reads and the way it

14      calculates a sentence, is inconsistent with our notions of

15      justice.  We are eating 55 years here.  That's a life sentence

16      just for the weapons.  And it is wrong.  That is throwing away

17      a life.  Thank you, Your Honor.

18             THE COURT:  Thank you.

19             Mr. Fun.

20             MR. FUN:  Thank you, Your Honor.  Your Honor, I

21      understand that Mr. Timbers feels the mandatory sentences are

22      unfairly harsh, and while I disagree with Mr. Timbers, our

23      sense of justice in this nation is the rule of law in a

24      democratic nation.  And in this particular case, in 1998

25      Congress amended 924(c), increasing the penalties for

1    possession of a machine gun.  Obviously, that seems a very

2    harsh sentence, but that is the legislative intent, and that's

3    what the law is.  And if justice means anything in a democratic

4    nation, it is compliance with the rule of law.

5         Your Honor, I think in this particular case -- I will

6    go with each count -- with regards to Counts 1 and 2, I would

7    recommend the low end of the guideline range, 188 months.  I

8    recommend that Counts 1 and 2 be served concurrently.

9         With regard to Count 11, I would recommend a sentence

10   of 120 months, again that that Count 11 be served concurrently

11   with Counts 1 and 2.

12        Count 14, to be consistent, 120 months, again

13   concurrently with Counts 1, 2 and 11.

14        When we get to the 924(c) counts, Your Honor, Count 13

15   has to be taken first since that is the most serious offense

16   and to do so otherwise, taken as a subsequent or second

17   offense, would mean a life sentence and obviously in this

18   particular case the length of term means a life sentence

19   anyway, but I think it is proper to take the machine gun first.

20        As for Count 13, Your Honor, I recommend the mandatory

21   minimum which is 360 months; that it be run consecutively to

22   Count 1.

23        With regards to Count 12, I would recommend a term of,

24   again, the mandatory minimum sentence which is 25 years, or 300

25   months, and that that be run consecutively to Count 11.

1           With regards to supervised release, I would --

2    although probably is not likely that the defendant will ever be

3    released on supervised release, I think it is appropriate that

4    for counts -- all the counts, that he be imposed a five-year

5    term of supervised release, exception being Count 14 which is a

6    three-year term of supervised release.  And I would ask that

7    all those terms of supervised release be run concurrent to each

8    other.

9           I don't believe a fine would be appropriate in this

10   case, Your Honor.  However, given the length of sentence in

11   this case, a minimal fine might help the defendant pass his

12   time away while incarcerated.

13          There are no issues of restitution in this case, Your

14   Honor, so I will not be asking for restitution.

15          Your Honor, I believe that addresses all of those

16   issues.  Does the Court have any questions of me concerning my

17   recommendations?

18          THE COURT:  No, thank you.

19          Miguel, you have an opportunity to speak on your own

20   behalf.  You can come up to the central podium.

21          THE DEFENDANT:  Good morning, Your Honor.

22          THE COURT:  Good morning.

23          THE DEFENDANT:  Pardon me if I stutter or repeat

24   myself.  I filed a motion for ineffective counsel and you

25   denied me.  I still -- I still want to seek new counsel.  I

1    believe -- I feel that this isn't right.  My lawyer for the

2    most part kept me in the dark from Day One.  He told me the

3    same thing over and over:  "You're going to get 70 years."

4    That's all I heard from him.

5           When you asked him if he went over the PSI with me, he

6    did that again.  He went -- he circled a bunch of numbers --

7    25, 30, 10 -- "You're going to get 70 years."  District

8    attorney -- my attorney said the district attorney offered me

9    40 years.  That's a lifetime.  I didn't sign.  That's my life.

10   And since I don't put nobody else in my predicament, they want

11   to hang me.

12          I mean, I didn't -- I didn't know what my court dates

13   were.  I didn't know when they got changed.  My family ain't

14   here today for that reason.  And during trial he spoke up a

15   little bit, but most of the talking Mr. Fleener did.  He wasn't

16   my lawyer.  He wasn't here to represent me.  Timbers was.  And

17   sometimes he got up.  You asked if he had questions, he will

18   come up to the microphone and just say, "No questions," and go

19   back and sit down.

20          As far as I feel that you misinstructed the jury on

21   the in furtherance part on the 924s.  I had guns.  I never

22   threatened nobody with them.  They were disassembled.  The

23   alleged methamphetamine that they found in those bags, I know

24   for a fact it is not methamphetamine.  My lawyer, he's a

25   chemist.  He knows that that wasn't methamphetamine.  He said

1    he told me that he was going to prove that the Government

2    spiked it.  He tried.  He knows his chemistry.  I didn't

3    understand the word about it, but every time he came up, he got

4    shot down.  He ruled in favor of -- they believed the

5    Government witness.

6              I asked him to test that -- what they found.  He

7    didn't -- he told me no because he said if it was spiked, it

8    would show up.  I wanted to test it.  It didn't get tested.  He

9    brought up an expert witness, and he didn't test it either.  I

10   mean, my codefendant, his stuff was tested.  It was sent out to

11   San Francisco, California to be tested.  How come mine couldn't

12   be sent out there to be tested or get a second opinion somehow?

13   Because, like I said, I know for a fact that those were not --

14   that wasn't methamphetamine.

15             The only one, the only person that said that they

16   received drugs from me was Kimberly Perkins.  She was facing a

17   life sentence.  She had to, I guess to save her ass.  Nobody

18   else said that they received methamphetamine from me directly.

19   Not one witness.  Not one codefendant.  No one except for her.

20   The Morgans said they assumed.  Well, hey, he had more guns

21   than I did.  If the law is, the law states he gets ten years.

22             Money laundering.  I sent money back to California to

23   my family.  I mean, I didn't know that was a crime.  Nobody

24   testified to me threatening them with guns.  Nobody testified

25   anything about me with drugs and guns.  No other -- no other

1      than the Morgan siblings and Perkins said that I actually had

2      drugs.  Everybody else said yeah, they did a line or I did a

3      line.  Nobody said I gave them drugs.  Nobody said they bought

4      drugs from me except them.

5           And the Government because -- like I said, I didn't

6      put nobody in my predicament, it is not in me.  Yeah, maybe I

7      had guns, but I never threatened nobody with them.  That's

8      not -- that's not why I had them.  I just want -- I just want

9      to put that on the record.

10          And I still want to fire my lawyer.  Because, like I

11     said, until right now again when you asked him if he had gone

12     over the revised Presentence Investigation Report, he hadn't.

13     He went -- he went to see me on the 17th of January.  I

14     didn't -- I heard from him once saying my court was changed to

15     February 6th -- no -- or -- to February 5th.  I did not see him

16     until February the 2nd for like 15 minutes, told me the same

17     thing again.  I just -- like Mr. Fun said, this ain't justice.

18     I just feel it ain't just because, like I said, I didn't put

19     nobody in my predicament, put their families in the predicament

20     my family is in, they want to give me a life sentence.

21     Basically it is a life sentence.  They want to take my life

22     from me.

23          I don't know what else to say, Your Honor.  I have a

24     letter that I wrote.  I would like you to read it.

25          THE COURT:  If you want to give it to Zac, I will read

1    it now.

2          Thank you for your letter.  It is very nicely written.

3    I appreciate additional insight into your family and your

4    character.

5          I was impressed by the testimony of your friend in

6    court.  I felt like he spoke about a young man that he cared

7    for and admired.

8          I, too, am concerned about the length of this

9    sentence, Miguel.  I believe that the guideline sentence is

10   more punitive.

11         THE DEFENDANT:  I'm sorry to interrupt you.  I believe

12   that due to the ineffective counsel I'm going to get an unfair

13   and unjust sentence, Your Honor.

14         THE COURT:  And I certainly understand that.  And I

15   will order new counsel for your appeal.

16         THE DEFENDANT:  I would request a Tenth Circuit

17   appellate attorney.

18         THE COURT:  Considering the characteristics of this

19   defendant and the length of the sentence, which is driven

20   singularly by the gun counts of conviction, I will vary on the

21   conspiracy and drug-related counts down to the minimum

22   mandatory sentence.  Miguel, you have to understand that I have

23   no choice but to follow the law.

24         THE DEFENDANT:  I would like to also mention

25   something.  As Kimberly Perkins testified or said that I had

1  drugs, she testified that the Government wanted her to wear a

2  wire on me.  If I was selling drugs, why didn't she wear a wire

3  on me?  It is just a he said/she said.

4        THE COURT:  Well, at this point it is beyond my reach

5  to consider the credibility of the witnesses or weigh their

6  testimony.  That was handed over to the jury.  All I can do is

7  to drop you down to the minimum mandatory sentence and appoint

8  new counsel for your appeal and allow you to bring the matters

9  up that you believe prejudiced you during the course of this

10 trial to the Tenth Circuit or back to this Court after your

11 appeals are exhausted, if that's where you stand.

12       I do believe that the resulting sentence is still

13 punitive and greater than necessary, but it is what the law

14 requires.

15       THE DEFENDANT:  Yeah, that was one of my points or

16 questions I had.  Like I said, the law is, the law states, how

17 did Morgan get ten years?

18       THE COURT:  Well, he pled guilty and cooperated.

19       THE DEFENDANT:  Yeah, he said he assumed the drugs

20 came from me.  He never said he got drugs from me, correct?  I

21 mean, I'm not going to throw just anybody under the bus like

22 that kid did.  That is just not right.

23       THE COURT:  I know and respect that choice.  You have

24 the choice to have these charges go to trial.  You know, at

25 this point, as I said, I can't -- I can't second-guess the jury

1    on the weight they gave to the testimony in trial.

2              THE DEFENDANT:  And it won't, Your Honor.

3              THE COURT:  I wish there were more I could do.  With

4    that, Miguel, I will state sentence and turn it over to Counsel

5    for any corrections or objections.

6              I would like to ask either you or your attorney

7    whether you have a request for placement to facilitate your

8    family.

9              THE DEFENDANT:  I asked him about that because I

10   didn't -- I didn't know what to request -- if he could help me

11   out to look for a place.  He said he would check into this, and

12   he never got back to me, so I don't have a request.

13             THE COURT:  I will put into the order request for

14   placement at a facility --

15             THE DEFENDANT:  All my family is in California.

16             THE COURT:  Where do they live in California?

17             THE DEFENDANT:  Fresno.

18             THE COURT:  I can request that they give consideration

19   for placement near to Fresno, California, to allow for

20   visitation.

21             THE DEFENDANT:  Thank you.

22             THE COURT:  I will state sentence and again turn to

23   the attorneys for any corrections.

24             Pursuant to the Sentencing Reform Act of 1984 and

25   those factors set forth in 18 USC Section 3553(a), it is the

1    judgment of this Court that the Defendant Miguel Angel Ordaz,

2    also known as Isaiah Rivera, also known as Tomas Hueso, Junior,

3    is hereby committed to the custody of the Bureau of Prisons to

4    be imprisoned for a term of 120 months as to Counts 1, 2 and

5    11; 30 years as to Count 13, to be served consecutively to all

6    other counts; 25 years as to Count 12, to be served

7    consecutively to all other counts; and 120 months as to Count

8    14, to be served concurrently with Counts 1, 2 and 11.

9           Upon release from imprisonment, the defendant shall be

10   placed on supervised release for a term of five years as to

11   Counts 1, 2, 11 and 13, and three years supervised release as

12   to Count 14, all to be served concurrently.

13          Within 72 hours of release from the custody of the

14   Bureau of Prisons, the defendant shall report in person to the

15   probation office in the district to which he is released.

16          While on supervised release, the defendant shall

17   comply with the standard and the mandatory conditions of

18   supervision adopted by this court and shall comply with the

19   following special conditions:  The defendant shall participate

20   in and successfully complete substance abuse treatment in a

21   program approved by the U.S. Probation Officer and abide by the

22   rules, requirements and conditions of the treatment program,

23   which may include testing to determine whether the defendant

24   has reverted to the use of controlled substances.  The

25   defendant shall not discontinue treatment without the

1    permission of the U.S. Probation Officer.

2         As a component of the defendant's treatment and

3    testing program, the defendant shall pay a one-time fee of $250

4    to partially defray the cost of treatment and/or drug testing.

5    Monetary payments made by the defendant shall be applied to

6    this fee only after all other court-ordered monetary

7    obligations are fulfilled.  Payment of the fee shall be by

8    money order or cashier's check made payable to the Clerk of the

9    District Court, 2120 Capitol Avenue, Second Floor, Cheyenne,

10   Wyoming, 82001, utilizing the payment coupon provided by the

11   probation office.  This condition is waived if the defendant is

12   supervised by a district other than Wyoming.

13        The defendant shall submit to drug and alcohol testing

14   as directed by the U.S. Probation Office and shall comply with

15   specific copays pursuant to district policy for failing to

16   comply with drug testing.

17        The defendant shall refrain from any use or possession

18   of alcohol and/or other intoxicants, including over-the-counter

19   medications used contrary to the recommended dosage or the

20   intentional inhalation of any substance, prescribed or

21   otherwise, without the permission of the U.S. Probation

22   Officer.

23        Additionally, the defendant shall not enter

24   establishments whose primary income is derived from the sale of

25   alcohol.

1          At the discretion of the U.S. Probation Officer, the

2    defendant shall participate in cognitive behavioral treatment

3    which may include, but is not limited to, Moral Reconation

4    Therapy, cognitive thinking, Thinking For A Change or

5    interactive journalling.  The defendant shall actively

6    participate in treatment until successfully discharged or until

7    the U.S. Probation Officer has excused the defendant from the

8    treatment regimen.

9          The defendant shall submit his person, residence,

10   office, vehicle or facility under his control to a search

11   conducted by a U.S. Probation Officer at a reasonable time and

12   in a reasonable manner upon reasonable suspicion of contraband

13   or evidence of a violation of these conditions.  Failure to

14   submit to a search may be grounds for a revocation, and the

15   defendant should warn all other occupants that the premises may

16   be searched pursuant to this condition.

17         The Court finds the defendant does not have the

18   ability to pay a fine within the guideline range but can pay a

19   reduced fine of $2,000, due immediately, inclusive of penalties

20   and interest, if applicable.  This fine is concurrent on all

21   counts.

22         The defendant shall pay all financial obligations

23   immediately and any financial obligation not paid immediately

24   or through the Bureau of Prisons Inmate Financial

25   Responsibility Program shall be paid beginning the month

1    following his release from confinement in monthly installments

2    of at least $100.

3            It is the order the defendant pay a special assessment

4    of $100 per count for a total of $600 which shall be due

5    immediately.  The defendant shall pay -- participate in the

6    Bureau of Prisons Inmate Financial Responsibility Program in

7    order to pay his fine and special assessment, and all monetary

8    payments shall be made payable to the Clerk of the District

9    Court, 2120 Capitol Avenue, Second Floor, Cheyenne, Wyoming,

10   82001.

11           The Court strongly recommends consideration by the

12   Bureau of Prisons for placement in a facility as close to his

13   family as possible who reside in Fresno, California.

14           The defendant is advised that he has 14 days from the

15   date of entry of Judgment to file any Notice of Appeal.

16           Are there any reasons other than reasons previously

17   argued as to why the sentence should not be imposed as stated?

18           Mr. Timbers.

19           MR. TIMBERS:  Your Honor, understanding that Miguel

20   Ordaz wishes to forward all of his objections, particularly

21   with regard to Counts 1, 2, 11, 12, 13 and 14 -- he continues

22   to object to that, he would like to know how to file his appeal

23   because I guess I will no longer be his attorney.  Would -- I

24   can file the appeal and be removed from the case, I guess, and

25   somebody else can pick it up.

1          THE COURT:  Yes.

2          MR. TIMBERS:  If Your Honor would like, I will file

3     that appeal on his behalf.

4          THE COURT:  I assume that that is Mr. Ordaz' wishes,

5     to pursue his objections and challenges to the conviction and

6     sentence, so please do so until Mr. Ordaz has substitute

7     counsel secured.  Please make sure you take all steps to

8     protect his rights.

9          MR. TIMBERS:  Yes, Your Honor.

10         THE COURT:  Thank you.

11         Anything from the Government?

12         MR. FUN:  No objection, Your Honor.

13         THE COURT:  All right.  Miguel, the sentence is

14    imposed as stated.  Good luck to you, sir.

15         THE DEFENDANT:  Thank you.

16         THE COURT:  We will stand in recess until call.

17         (Sentencing proceedings concluded

18         9:55 a.m., March 5, 2012.)

19

20

21

22

23

24

25

1                   C E R T I F I C A T E

2

3

4

5           I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Merit Reporter and Federal Certified Realtime

8    Reporter, do hereby certify that I reported by machine

9    shorthand the foregoing proceedings contained herein on the

10   aforementioned subject on the date herein set forth, and that

11   the foregoing pages constitute a full, true and correct

12   transcript.

13

14           Dated this 30th day of April, 2012.

15

16

17

18                          */s/ Janet Davis*

19                      _____

20                            JANET DAVIS
                       United States Court Reporter
21                       Registered Merit Reporter
                    Federal Certified Realtime Reporter
22

23

24

25